**POLK TERRACE, INC., Appellant,**

v.

**Jerome M. CURTIS et ux., Appellees.**

**No. 16991.**

Court of Civil Appeals of Texas.

Dallas.

Dec. 1, 1967.

Rehearing Denied Dec. 29, 1967.

Jack D. Eades, Clark, West, Keller, Clark & Ginsberg, Dallas, for appellant.

Robert J. Shoemaker, McKool, McKool & Jones, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from a judgment of $7,750 awarded to appellees Jerome M. Curtis and wife, Natalie W. Curtis, against appellant Polk Terrace, Inc. as damages because of alleged false representations and breach of implied warranty that appellees claim induced them to purchase a dwelling house. The judgment is based on jury findings favorable to appellees.

Appellees first saw the house and contacted Don Weems, appellant's salesman, on or about June 1, 1959. On June 16, 1959 they signed a contract to purchase the property. On July 1, 1959 they moved into the house and took possession of the property, though their loan had not yet been approved or a warranty deed executed. On August 19, 1959, their loan having been approved, the deal was closed and a warranty deed was executed and delivered to them.

Appellee Jerome Curtis testified that when he and his wife contacted Don Weems about June 1, 1959 Weems assured him that the house had "a quite proper foundation at that time and that it was quite substantial" So far as Curtis could remember

this was the only occasion when they discussed the construction of the house. Curtis did not remember whether Weems told him the house was of the highest and best quality.

Mrs. Curtis testified that in a separate conversation with her Weems told her that the house was of "grade A construction" and "that the house would be up forever."[1]

Appellees further testified that during the first year of their occupancy defects began to appear. Mortar joints were cracking in the brick at different points of the house. The sheetrock was cracking inside the house. A list of defects was sent to appellant, who had them repaired. But cracks continued to appear.

In its brief appellant lists ten defects and the dates appellees acquired knowledge of them and became concerned about the construction of the house. In their brief appellees agree that six of these defects and dates are correct. They are as follows:

Item No. 2. In 1960 appellees observed bricks pulling loose around the top of the right side of the garage door.

Item No. 3. In 1961 the walk at the southwest corner of the house had settled.

Item No. 4. In the summer of 1963 the driveway at the southwest corner of the house had settled.

Item No. 8. In 1960 and again in 1961 masonry cracked under a window on the northeast corner of the house after it had been repaired.

Item No. 9. In 1960, 1962 and possibly in 1963 masonry cracked under both windows on the east side of the house.

Item No. 10. In 1961 and 1962 masonry cracked and pulled out under the front bedroom windows on the south side of the house.

As to the four items concerning which the parties do not agree we shall, for present purposes, rely on the testimony of appellee Jerome Curtis:

Item No. 1. In May of 1963 appellees observed bricks pulling loose around the front door.

Item No. 5. In the summer of 1963 appellees observed a hairline crack extending diagonally in the southwest corner of the house which settled. This according to appellees was a foundation defect.

Item No. 6. In May 1963 a crack existed around the utility area.

Item No. 7. In the summer of 1963 a concrete beam cracked below the sliding glass door on the north side of the house. Curtis referred to this also as a foundation crack.

In 1963, in an effort to remedy the defects, appellees built planter boxes 20 inches high around most of the foundation, the bottom of the boxes being at ground level. This was done after appellee Jerome Curtis consulted an employee of appellant who happened to be a neighbor living across the street. However, Curtis testified that the building of the boxes was his own idea. He also testified that all the cracks were apparent before he built the planter boxes in 1963—that no new cracks developed after he built the boxes, but the old cracks widened and worsened after the boxes were built.[2]

---

1. There is a sharp conflict in the evidence as to whether the house was in fact defectively constructed of inferior materials. But in view of the jury's verdict we shall not set out the testimony supporting appellant's contention.

2. Since the parties do not agree as to the last four of the above specified items or where Curtis' testimony about them may be found in the record, we deem it advisable to name the pages in the Statement of Facts where the supporting testimony appears: Item No. 1 at pp. 32, 33; Item No. 5 at pp. 12, 34; Item No. 6 at pp. 11, 34–35; Item No. 7 at pp. 37–38, 39; Curtis' testimony that all the cracks were apparent before he built the planter boxes in 1963 will be found at p. 40.

Appellant's first point on appeal is that the trial court erred in overruling a motion for judgment *non obstante veredicto,* the grounds of the motion being that as a matter of law appellees had knowledge for more than two years prior to October 1, 1965 of facts that would cause a reasonably prudent person to make inquiry which would have led to a discovery of the alleged false representations; therefore their cause of action was barred by the two year statute of limitations. Suit was not filed by appellees until October 1, 1965, six years and four months after the alleged false representations were made on or about June 1, 1959. Curtis himself testified that he had become seriously concerned in the summer of 1963 about the cracks which had appeared in the house.

Appellees in answer to the above charge say that they did not discover appellant's fraud until the fall of 1965, after they had hired an expert to investigate, and that they filed suit immediately thereafter.

■ We agree with appellant. The applicable rule as stated by our Supreme Court is as follows:

"* * * the statute of limitation begins to run from the time the fraud is discovered, *or could have been discovered by the defrauded party by the exercise of reasonable diligence."* (Emphasis ours.) Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 440, 128 A.L.R. 757 (1940).

See also Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263 (1941) and Carver v. Moore, 288 S.W. 156 (Tex. Com.App., 1926).

■ It is our opinion that as a matter of law in the light of their own testimony, appellees for more than two years prior to the institution of their suit on October 1, 1965 had knowledge of such facts as would cause a reasonably prudent person to make inquiry which would have led to a discovery of the fraud. In White v. Bond, 362 S.W.2d 295 (Tex.Sup.1962), it is said, "Knowledge of such facts is in law knowl-

edge of the fraud itself." See also Wise v. Anderson, 163 Tex. 608, 359 S.W.2d 876 (1962); Glenn v. Steele, 141 Tex. 565, 61 S.W.2d 810 (1933); Lindsey v. Dougherty, 60 S.W.2d 300 (Tex.Civ.App., Amarillo 1933, writ ref'd). Appellant's first point on appeal is sustained.

■ In its thirteenth point appellant says that as a matter of law there was no issue in this case on implied warranty, therefore it was error to submit Issue No. 10 which inquired whether the house was constructed of material and workmanship suitable for the purpose for which it was intended to be used. Again we agree with appellant. Art. 1297, Vernon's Ann.Civ.St., expressly provides that certain covenants, "and none other" in instruments of conveyance using the words "grant" or "convey" are implied. The implied warranty for which appellees contend is not included among those specified in the statute. Therefore an action for breach of an implied warranty of fitness and suitability of the property conveyed does not lie in this case. Westwood Development Co. v. Esponge, 342 S.W.2d 623, 628 (Tex.Civ.App., San Antonio 1961, writ ref'd n. r. e.).

In its second point appellant says there was insufficient evidence to support the jury's finding that appellees did not have knowledge of facts which would cause a reasonably prudent person to make inquiry which would have led to a discovery of the falsity of the representations. If we felt that we might be mistaken in sustaining appellant's first and thirteenth points we would sustain appellant's second point and remand this cause for another trial. However, we have concluded that we must reverse and render judgment for appellant since we have sustained appellant's first and thirteenth points.

In its third to twelfth points inclusive and its fourteenth point appellant attacks certain of the jury's findings on the ground that there was either no evidence to support submission of the issue in question or insufficient evidence to support the finding;

**606**

appellant also challenges the authority of Weems, its agent, to bind it by his representations; challenges the measure of damages as submitted by the court, and points out that on October 5, 1965 appellees were divested of title to the property in question by foreclosure of a first lien mortgage. We overrule these points either because they do not involve error, or if there was error it was harmless under the circumstances.

Having sustained appellant's first and thirteenth points we reverse the trial court's judgment and render judgment for appellant that appellees take nothing by their suit.

Reversed and rendered.