**BAYOU BEND TOWERS COUNCIL OF CO–OWNERS, Appellant,**

v.

**MANHATTAN CONSTRUCTION COMPA-NY, Chamberlin Waterproofing & Roofing Systems, Inc., PPG Industries, Inc. and Featherlite Building Products Corporation, Appellees.**

No. C14–93–00207–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 18, 1993.

Rehearing Denied Dec. 16, 1993.

Damon R. Capps, Houston, for appellant.

Shelly Rogers, Lauren Beck, Richard A. Sheehy, M. Karinne McCullough, Charles W. Lyman, Houston, Kyle W. Gooch, Dallas, Robert L. Asams, A.M. Landry, III, Houston, for appellees.

Before ROBERTSON and CANNON, JJ., and ROBERT E. MORSE, Jr., J., sitting by designation.

## · OPINION

CANNON, Justice.

Appellant, Bayou Bend Towers Council of Co–Owners ("Bayou Bend"), a condominium owners association, brought suit for construction defects in the condominium building and garage. The trial court granted summary judgment based on limitations in favor of appellees, who were contractors for the project. Bayou Bend now appeals, raising three points of error concerning application of the discovery rule and the doctrine of fraudulent concealment. We affirm.

Bayou Bend filed suit against the developer on July 12, 1990, and it added these appellees as defendants on April 18, 1991. Manhattan Construction Company ("Manhattan") was the general contractor for the condominium project, Bayou Bend Towers, and the other appellees were subcontractors. PPG Industries, Inc. ("PPG") was responsible for installing windows, and Featherlite Building Products Corporation ("Featherlite") provided and installed the precast con-

crete siding. Chamberlin Waterproofing & Roofing Systems, Inc. ("Chamberlin") was responsible for caulking around the windows and the precast panels, and the placement of the garage roof. The construction of the condominium was substantially completed in 1981. The building sustained damage from Hurricane Alicia in 1983. Both before and after the hurricane, it suffered from water leaks in the roof, windows and around the precast concrete walls.

Bayou Bend's suit alleged negligence, breach of implied warranties and violation of the Texas Deceptive Practices—Consumer Protection Act ("DTPA"). *See* TEX.BUS. & COM.CODE ANN. § 17.41–.63 (Vernon 1987 & Supp.1993). Negligence and DTPA have two year limitations periods, and breach of warranty is governed by the four year statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.-003(a); 16.004(a) and 16.051 (Vernon 1986); TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987). All appellees filed motions for summary judgment raising limitations as grounds. On August 24, 1992, the trial court granted each of these motions. On November 2, 1992, the court severed this interlocutory summary judgment from the original cause, resulting in a final summary judgment, and Bayou Bend now appeals.

Bayou Bend brings three points of error claiming that the trial court erred in granting summary judgment because: (1) a fact issue exists as to whether it had a reasonable opportunity to discover the cause of its injury; (2) a fact issue exists on its cause of action against Featherlite only as to whether the latent defect in the precast concrete panels could have reasonably been discovered before January 1, 1990; and (3) appellees were estopped by fraud from relying on limitations.

Our supreme court has set the standards we apply in reviewing a trial court's grant of a summary judgment. These standards are:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the non-movant as true; and

3. We must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant is entitled to summary judgment based on an affirmative defense if it proves as a matter of law all the elements of the affirmative defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). When a defendant seeks summary judgment based on the statute of limitations, it must prove when the cause of action accrued and must negate the applicability of the discovery rule if pled by the non-movant. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990).

In its first point of error, Bayou Bend contends that a material fact issue exists as to whether it was afforded a reasonable opportunity to discover the cause of its injury under the discovery rule. Bayou Bend contends that latent construction defects were the cause of the leakage in Bayou Bend Towers. It alleges that although it was aware of the leaks in the complex, it was unable to discover that construction defects were the cause of those leaks.

The general rule for a tort action is that it accrues when the tort is committed, notwithstanding the fact that the full range of damages are not ascertainable until a later date. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967). A party need only be aware of enough facts to apprise him of his right to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1990). In some cases, the discovery rule is an exception to the general accrual rule. When applied, the discovery rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should have discovered, the nature of his injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). The discovery rule imposes a duty on the plaintiff to exercise reasonable diligence to discover facts of negligence or omission. *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d

488, 492–93 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

■ The discovery rule applies in cases where the injured party did not and could not know of its injury at the time it occurred, that is, when the injury is inherently undiscoverable. *See, e.g., Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988) (legal malpractice); *Weaver v. Witt,* 561 S.W.2d 792, 793–94 (Tex.1977) (negligently performed operation). Appellees concede that the discovery rule applies to DTPA actions, but contend that the discovery rule does not apply to Bayou Bend's negligence and breach of warranty actions. Rather, they argue that the "legal injury" rule applies. Under this theory, limitations begins when the wrongful act is committed and damage is suffered. *Black v. Wills,* 758 S.W.2d 809, 816 (Tex.App.—Dallas 1988, no writ). We find that limitations on Bayou Bend's tort claims began when the condominium first sustained damage; however, we must address the application of the discovery rule to Bayou Bend's DTPA action.

Bayou Bend contends that the statute of limitations was tolled until it discovered the *cause* of the leaks, not just the leaks themselves. To support its argument, Bayou Bend relies on medical malpractice and bodily injury cases, generally involving a foreign object or substance in the body. In these cases, the statute of limitations was tolled until the plaintiff discovered the cause of the injury. *See, e.g., Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967) (foreign object left in patient's body following surgery); *Alfaro v. Dow Chem.,* 751 S.W.2d 208, 209 (Tex.App.—Houston [1st Dist.] 1988) *aff'd,* 786 S.W.2d 674 (Tex.1990), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991) (sterility from exposure to pesticide); *Corder v. A.H. Robins Co.,* 692 S.W.2d 194, 196 (Tex.App.—Eastland 1985, no writ) (sterility caused by Dalkon Shield); and *Grady v. Faykus,* 530 S.W.2d 151, 154 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.) (exposure to excessive radiation). Bayou Bend asks this court to apply the same rationale to this case. In addition, at oral argument, Bayou Bend argued that limitations should have been tolled until it had an opportunity to discover not only the cause of the

defects, but also the parties responsible. We are not persuaded by Bayou Bend's argument and find that the cases it cites are not controlling under these facts. Under Texas law, it is the discovery of the injury, and not the discovery of all of the elements of a cause of action that starts the running of the clock for limitations purposes. *Seibert v. General Motors Corp.,* 853 S.W.2d 773, 777 (Tex. App.—Houston [14th Dist.] 1993, no writ). Here, all that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible. *See Russell v. Ingersoll– Rand Co.,* 841 S.W.2d 343, 344 n. 3 (Tex. 1992) (limitations generally begins when the injury is known, not when the alleged wrongdoers are identified).

Bayou Bend pled the discovery rule; therefore, it was appellees' burden to establish when Bayou Bend discovered, or should have discovered, its injury. It is undisputed that the construction of Bayou Bend Towers was completed in 1981. Appellees' summary judgment proof established that as early as 1982, Bayou Bend was aware of leaks in the garage roof. During Hurricane Alicia in 1983, the condominium suffered extensive leaks, which were observed by Bayou Bend's representative, David Croft. He testified by deposition that the building "leaked like a sieve" before, during and after the hurricane. Bayou Bend or its insurer, Chubb Lloyd Insurance Company ("Chubb"), retained experts to determine the source of the leaks in 1983. Ron Lapina of Craddock & McDowell issued a report on October 14, 1983 to Chubb reflecting the results of his inspection and his interviews with representatives of Bayou Bend. His report questioned the quality of the caulking done by the original contractors. Bayou Bend retained Don Workman & Associates in September 1983 to supervise repairs and perform investigatory work. Tests were conducted on the leaks in 1983 and 1984 by a consulting firm, Construction Consulting Laboratory. The results of the tests, showing water leakage in the window wall, were submitted in a series of reports. Caulking repairs were performed by B & M Caulking, Midas Construction and A & M Waterproofing. Most of this work consisted of sealing

the glass, the metal window frames, and the precast panels. These repairs were completed in 1984, and none were performed by appellees. Chubb refused to cover the costs of all repairs because it believed that some were caused by construction defects rather than the hurricane.

In 1985, Bayou Bend filed suit against Chamberlin, Manhattan & PPG for alleged defects in the construction, specifically defects in the construction of the window systems, precast panels, and caulking defects. Featherlite was not named in this suit; a different contractor was erroneously named as having supplied the precast panels. Bayou Bend alleged that the condominium sustained extensive water leakage "resulting from defects in the exterior wall and window system of the condominium project" on or before August 18, 1983. Extensive discovery was conducted. In 1989, this suit was dismissed after plaintiffs moved for a non-suit.

The summary judgment proof shows Bayou Bend was aware, during the pendency of the first suit, that there were leaks in the window wall of the complex and cracks in the precast panels. In 1986, Bayou Bend contacted Moisture Systems, Inc., a consulting firm. Its president, D.B. Hales, inspected the project while Bayou Bend's president, Dr. Elliott Powers, pointed out areas of leakage to him. Moisture Systems provided written reports, recommended further comprehensive investigation, and submitted a bid for this investigative work. In March 1987, Bayou Bend again considered hiring an engineering firm to evaluate the defects in the building. The minutes from Bayou Bend's board meeting of March 2, 1987, show that Bayou Bend was considering Moisture System's report and the Engineering Selection Committee was reviewing its proposal. Apparently, Bayou Bend did not conduct the recommended additional investigation until 1990 when this suit was filed against the developer.

We conclude that appellees provided summary judgment proof establishing that there is no genuine issue of fact as to when Bayou Bend discovered, or through the use of reasonable diligence should have discovered, its injury. We find that limitations began to run in 1982 as to defects in the garage roof, and limitations began as early as 1983, or at the latest in March 1987, as to the defects in the windows, caulking and the precast concrete panels. Bayou Bend did not file suit against these contractors until over four years after this latest date of discovery. It is clear that even if Bayou Bend did not actually discover the cause of its leakage problem until January 1990 as it asserts, it should have discovered the nature of its injury years earlier by the use of reasonable diligence. Bayou Bend was under a duty to undertake further inquiry to discover the nature of the damage it suffered. We hold that Bayou Bend's causes of action are barred by limitations.

The facts in this case are similar to those in *Tenowich v. Sterling Plumbing Co.*, 712 S.W.2d 188 (Tex.App.—Houston [14th Dist.] 1986, no writ). There, the two-year statute of limitations applicable under DTPA began to run on the date purchasers first discovered multiple leaks in pipes and were alerted to the fact that there was a serious problem throughout the house, even though it was not until some months later that a claims adjuster examined the pipes and informed them of the extent of the damage. *Id.* at 190. The fact that a party may not immediately be able to determine the total amount of damages it may suffer does not toll the statute of limitations. *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, writ denied). Here, Bayou Bend was aware of construction defects as early as 1982 and 1983, and its cause of action accrued then rather than when it learned the full extent of the damages.

■■■ Bayou Bend contends that its present members had no knowledge about the prior suit, even though Bayou Bend was a plaintiff in that suit. Bayou Bend was established as a non-profit corporation in 1980. In 1981, the developer established Bayou Bend as a condominium association pursuant to a declaration of condominium. Under the declaration, Bayou Bend had the authority to administer the affairs of the complex, including handling claims for loss or damage. Even though Bayou Bend complains that the original board was controlled by the developer, the change in the composition of Bayou

Bend's board of directors does not affect the time of discovery of its injury. After-acquired knowledge by new and subsequent corporate shareholders and officers does not constitute new knowledge to the corporate entity within the meaning of the discovery rule and cannot be used to defeat a statute of limitations defense. *Alice Roofing and Sheet Metal Works, Inc. v. Halleman,* 775 S.W.2d 869, 870 (Tex.App.—San Antonio 1989, no writ). Therefore, we find that the change in composition of Bayou Bend's board has no effect on the accrual of its cause of action.

■■■ In connection with its first point of error, Bayou Bend raises an allegation that application of the statutes of limitation in this case violates the open courts provision of the Texas constitution. *See* TEX. CONST. art. I, § 13. Bayou Bend has waived this argument by not raising it in the court below. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Even if not waived, the argument is unavailing. The open courts provision does not serve to toll the running of the statute of limitations until a plaintiff discovers its cause of action. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex. 1985). Rather, it requires only that a plaintiff be given a reasonable time to discover its injury and bring suit before the cause of action is barred by limitations. *Work v. Duval,* 809 S.W.2d 351, 354 (Tex.App.—Houston [14th Dist.] 1991, no writ). We find that Bayou Bend had a reasonable time to discover its injury and file suit, and application of the statutes of limitation in this case is not unconstitutional. We overrule Bayou Bend's first point of error.

■■■ Bayou Bend claims in its second point that a fact issue exists about whether the latent defect in the precast panels reasonably could have been discovered, and summary judgment should be reversed at least as to the claims against Featherlite. We reject this contention.

Featherlite manufactured the precast concrete siding panels used in construction of the condominium. Bayou Bend contends it could not have discovered the latent defect in these panels until January 1990 at the earliest. Specifically, it contends that the concrete is not of the correct mix and the struc-tural steel is not correctly placed, leaving the structure unstable. In its reply brief and at oral submission, Bayou Bend argued that because of improper caulking of the panels and placement of the steel rods in the panels, the rods rusted and expanded, causing pieces of concrete to break off. Bayou Bend claims this occurred after January 1990, and consequently its cause of action did not accrue until after it hired an expert to determine the extent and cause of its damage. However, these contentions are not supported by the record.

Bayou Bend filed a joint response to the motions for summary judgment of Featherlite and Manhattan. In support of its response, Bayou Bend supplied two affidavits. First, the affidavit of Mary Worscheh, the condominium's manager, contains the following allegation:

> [T]he Bayou Bend Towers Council of Co-Owners did not have knowledge of the defects causing the damage to the Bayou Bend and that these defects were hidden and not discoverable until after January, 1990. The Bayou Bend Council of Co-Owners had no record of the previous lawsuit filed under C.A. No. 85–46974 in the 333rd District Court of Harris County, Texas, has no record of the receipt of any funds by check from Chubb Lloyd Insurance Company of Texas in connection with that lawsuit and received no notification of dismissal upon Motion for Nonsuit of this case.

Her affidavit does not indicate at what point she became manager.

The second affidavit is from G.W. Pullin, Bayou Bend's president. His affidavit also fails to establish when he became president. He swears:

> [T]he Bayou Bend Towers Council of Co-Owners did not have knowledge of the defects causing the damage to the Bayou Bend and the garage and that the defects, latent in nature, were hidden and not discoverable until after an extensive testing procedure was completed in January, 1990 and that the causes and responsibility for the defects were not discovered until January, 1990. Furthermore, it was not discov-

ered until 1991 and 1992 that Featherlite and Manhattan from the very beginning of the construction in 1980–1981, knew of these defects and the faulty construction and installation of the concrete panels and the garage.

He states that he relied upon representations that Bayou Bend was constructed in a good and workmanlike manner and that he discovered that the concrete panels were defective in January 1990. In addition, he states that he discovered that Manhattan and Featherlite knew of these problems, and failed to correct them. He also denies that he had knowledge of the previous lawsuit.

These two affidavits are the sum total of Bayou Bend's proof in response to the motions for summary judgment. Bayou Bend failed to supply an affidavit from any expert, a copy of its expert report, or any other proof substantiating its claim in its brief that the steel rods rusted, causing the panels to expand and break apart. Bayou Bend claimed at oral argument that the cracks in the panels were normal and not sufficient to put them on notice; however, there is no proof offered that such cracking is considered normal. There is no proof in the record before us sufficient to raise a fact question as to Bayou Bend's contention that it could not have reasonably discovered its cause of action about defects in the panels earlier.

In a case with somewhat similar facts, limitations began when plaintiffs first noticed cracks in the sheetrock and bricks pulling loose, even though they did not hire an expert to investigate the foundation problems and file suit until over five years later. *Polk Terrace, Inc. v. Curtis,* 422 S.W.2d 603, 604–05 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). The Dallas court held that the cause of action could have been discovered by the exercise of reasonable diligence more than two years before suit was filed; therefore, it was barred by limitations. *Id.* at 605.

Featherlite provided in its summary judgment proof a copy of a memo from Linda Graham, the condominium manager, to Bayou Bend's board dated November 21, 1986, documenting the plan to hire an engineering firm to evaluate, among other problems, defects from "cracks in the precast." In addition, Featherlite provided proof that a consulting firm, Moisture Systems, Inc., observed cracks and leaks in the interior and exterior concrete panels in late 1986 and reported its recommendations to Bayou Bend, specifically to its president, in a series of letters in December 1986 and January 1987. These reports indicate that an expert considered the cracks a defect and recommended further study. In conclusion, Bayou Bend had notice in 1986 that the precast panels were defective and should have, through the use of reasonable diligence, discovered its injury. We overrule Bayou Bend's second point of error.

■■■■ In its third point of error, Bayou Bend contends that appellees are estopped from relying on the statutes of limitations by fraudulent concealment. The doctrine of fraudulent concealment provides that where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from a party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of its right of action, or should have learned of it through the exercise of reasonable diligence. *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983). Fraudulent concealment is an affirmative defense to the statute of limitations, and as such, the burden is on the plaintiff to come forward with summary judgment proof to support the allegations of fraudulent concealment. *Work v. Duval,* 809 S.W.2d at 354. To show that the defendant engaged in fraudulent concealment for purposes of estopping the assertion that limitations has run, the plaintiff must show that the defendant had actual knowledge that a wrong had occurred and had a fixed purpose to conceal facts necessary for the plaintiff to discover that its cause of action had accrued. *Arabian Shield Development Co. v. Hunt,* 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied). The estoppel effect is not permanent, but merely tolls limitations until the plaintiff learns of the facts that give rise to its cause of action or should learn of the facts in the exercise of reasonable diligence. *Id.*

Appellees contend Bayou Bend waived its third point on fraudulent concealment as to Chamberlin and PPG because it did not raise that claim in the court below in response to the summary judgment motions. In addition, because Bayou Bend knew or should have known of its cause of action, appellees argue the estoppel effect of any concealment ended at the latest in early 1987. Finally, appellees assert that Bayou Bend failed to establish the elements of fraudulent concealment. We agree with these contentions.

Fraudulent concealment was raised only as to Manhattan and Featherlite. As we discussed under point two, Bayou Bend's only summary judgment proof was the two affidavits from Mr. Pullin and Ms. Worscheh. We find that Bayou Bend has failed to meet its burden to establish fraudulent concealment. First, appellees owed Bayou Bend no duty to disclose because there was no fiduciary relationship between the parties. *See Seibert v. General Motors, Inc.*, 853 S.W.2d at 778. In addition, Bayou Bend did not establish that appellees acted with a fixed purpose to conceal Bayou Bend's cause of action. *See Wilson v. Rudd*, 814 S.W.2d 818, 823 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

Finally, we have already determined that Bayou Bend had notice of facts sufficient to terminate any estoppel effect of fraudulent concealment. *See Borderlon*, 661 S.W.2d at 909. Knowledge of facts, conditions, or circumstances which would cause a reasonable person to make inquiry leading to the discovery of the concealed cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes. *Stephens v. James*, 673 S.W.2d 299, 303 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Accordingly, we overrule Bayou Bend's third point of error.

We affirm the trial court's grant of summary judgment.