Affirmed and Memorandum Opinion filed May 17, 2007








Affirmed and Memorandum Opinion filed May 17, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00129-CV

____________

 

SCOTT FISH, Appellant

 

V.

 

MARSTERS COMPANY, FRANK H.
MARSTERS, INDIVIDUALLY, AND PEDIGO SERVICES, INC., Appellees

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 02-CV-123439A

 



 

M E M O R A N D U M   O P I N I O N








This is an appeal from summary judgments in which the trial
court dismissed claims asserted by a homeowner against the general contractor
that built his house, the owner of the general contractor, and one of the
subcontractors.  The homeowner, who was not the original owner, asserted claims
which allegedly arose from the original construction and from repair efforts
made after he bought the home.  The trial court granted summary judgment and
dismissed all the homeowner=s claims against the general contractor
and its owner and dismissed some of the claims against the subcontractor.  The
trial court  severed some of the homeowner=s claims into this
case to make the summary judgments final.  We conclude that some of the
homeowner=s arguments on appeal are directed at claims that were
not severed into this case.  As to the remaining claims, we conclude that, with
one exception, the homeowner either has not challenged all independent
summary-judgment grounds or has waived any error.  As to the homeowner=s negligence claim
against the general contractor and its owner, we conclude that the trial court
properly granted summary judgment based on the affirmative defense of
limitations.  Accordingly, we affirm the trial court=s judgment.

I.  Factual and Procedural
Background

A.      Original
Construction and Purchase of the House

Appellee Marsters Company, owned by Frank Marsters, built a
home in Sugar Land, Texas (hereinafter the AHouse@).  Marsters
Company was the general contractor during the construction of the House, and it
hired several subcontractors, one of which was appellee Pedigo Services, Inc.,
a company that performed the stucco, roofing, and flashing work during the
initial construction.  Marsters sold the House to Jitendra Patel on January 20,
1999. 

B.      Subsequent
Sale and Inspection of the House








Approximately fourteen months later, in early 2000,
appellant Scott Fish became interested in purchasing the House.   Although
Marsters does not recall ever getting a call from Fish, Fish testified during
his deposition that before buying the House, he contacted Marsters to inquire
about certain water stains that he had observed during his initial visual
inspection of the House.   Fish had noted a large stain in the sheetrock in the
first-floor ceiling outside the den door and underneath the deck.  He also had
seen a stain in the sheetrock running up and down the left side of a window in
the den.  Fish testified that Marsters, without inspecting the House to see the
stains himself, told Fish over the phone that the stain under the deck most
likely was caused by moisture and wind coming off the lake behind the House and
that this problem could be corrected by caulking the window.  As for the stains
on the left side of the den window, Fish stated that Marsters informed him that
they probably were caused by lack of caulking.[1] 
Fish admitted that Marsters did not specifically state that there were no other
possible reasons for the stains.    

Despite his alleged concerns, Fish entered into an earnest
money contract to purchase the House from Patel.  Approximately ten days
later, on February 17, 2000, Fish obtained a formal inspection of the House. 
The inspector stated that there was evidence of water or moisture penetration
at the den window and that there was evidence of moisture stains on the ceiling
at the rear patio.  As to the latter stain, the inspector suggested that Fish
remove the upper balcony decking for a further inspection.  Fish, however, took
no further action in response to the inspector=s
recommendations.  Furthermore, Fish did not request that Patel repair the
problems; instead, he proceeded with the purchase of the House the following
month.  The closing for the sale of the House occurred in March 2000.


C.      Repair
Work on the House








After buying the House, Fish spent a few months remodeling
the home in areas that did not pertain to the stains that Fish previously had
noticed.  During this period, Fish had a swimming pool installed and arranged
for other work to be performed, including replacement of sheetrock,
installation of slate decking around the swimming pool and second-floor
balcony, landscaping, and the addition of a room above the garage which
required major structural reconfiguration of the garage ceiling joists.  Fish
also had all of the interior cabinetry, countertops, plumbing fixtures, and
flooring removed.  This extensive remodeling work was completed by Mike McCarty
of Fish Construction, Inc., and it was supervised by both Fish and Morris
Ashley of Ashley Enterprises.  During this time, Fish did not investigate or
address any of the concerns raised in the inspection report regarding the
ceiling and wall stains.  

 Finally, in July 2000, after finding evidence of rotting
wood around the den window,  Fish contacted Marsters about the water damage,
including but not limited to, the windows and the stucco.  Fish asked Marsters
to come and inspect the property and stated that repairs were needed.  After
Marsters inspected the property around the middle of July, Pedigo was contacted
to come and inspect the property.  Soon thereafter, Pedigo visited the House
and determined that the stucco on the back of the House had to be removed and
replaced.   Pedigo agreed, at its own cost, to replace the stucco.  Pedigo
prepared and provided Fish with a three-page remediation proposal.  

Although Fish accepted this proposal, Fish demanded that
all work be done under the supervision of French Engineering, a company Fish
had hired.   After several months, this situation proved to be unworkable, and
Pedigo offered to pay Fish $9,000 to finish the job himself.  Fish declined
this offer.   Pedigo then asked Marsters to finish the job. Marsters
declined.  Fish then hired another contractor to complete the repairs.  Fish
contends that these repairs cost him over $400,000.

D.      Homeowner=s Claims Against
the General Contractor and Subcontractor








On March 21, 2002, Fish filed a lawsuit against Marsters
Company and Frank Marsters, Individually (hereinafter collectively AMarsters@) and Pedigo,
alleging, among other things, that Marsters and Pedigo were negligent in the
original construction of the House and in subsequently repairing the House.[2] 
Marsters filed a motion for summary judgment asserting both traditional and
no-evidence grounds.  The trial court granted Marsters= motion without
specifying the grounds for its ruling.  Pedigo later filed a traditional motion
for summary judgment.   Fish filed a motion to sever his claims against Pedigo
from his claims against Marsters, so as to make the trial court=s summary
judgments final.  The trial court later granted Pedigo=s motion for
summary judgment in part and denied it in part,  and at the same time, the
trial court granted a severance to make its summary judgments final.  In its
order, the trial court severed into this case all of Fish=s claims against
Marsters and his claims against Pedigo as to the original construction of the
House, while leaving in the original case Fish=s claims against
Pedigo as to subsequent repairs to the House.  The trial court stayed the
nonsevered case pending the appeal in this case.  The trial court thereafter
signed a new order granting Pedigo=s traditional
motion for summary judgment as to all claims pending in this case without
specifying the grounds for its ruling.  

II.  Issues Presented 

Appealing the trial court=s summary
judgments in favor of Marsters and Pedigo, Fish asserts the following issues:

1.       The trial court erred in granting summary
judgment when fact issues existed on all of his claims against Marsters and
Pedigo. 

2.       The trial court erred in failing to
construe each fact and inference in Fish=s favor.

3.       The trial court erred in granting summary
judgment because there is an issue of fact as to whether Fish=s claim for fraud and
misrepresentation accrued prior to his purchase of the House, at the time of a
misrepresentation, or when Fish acted on the misrepresentation and purchased
the House. 

4.       The trial court erred in granting summary
judgment because there is an issue of fact as to whether the discovery rule is
negated by a routine pre-purchase home inspection that failed to reveal the
real problem with the House.








5.       The trial court erred in granting summary
judgment because there is a fact issue as to whether Pedigo and Marsters are
immunized from fraud  and misrepresentation claims because Fish undertook his
own inspection of the House.

6.       The trial court erred in granting summary
judgment because there is a fact issue as to whether Fish=s original inspection precluded
liability of Pedigo and Marsters and whether Pedigo=s and Marster=s actions in repairing the House
created liability.

7.       The trial court erred in granting summary
judgment because there is a fact issue as to whether Pedigo and Marsters are
liable to Fish even though Fish undertook his own inspection of the House.

8.       The trial court erred in granting summary
judgment because there are fact issues as to whether Fish was required to pay
for the repairs to bring  a breach-of-contract claim or claim under the Texas
Deceptive Trade Practices Act (ADTPA@) and whether pre-existing warranty
obligations and forbearance from suit by Fish constitute sufficient
consideration.

9.       The trial court erred in granting summary
judgment because there are issues of fact as to whether Pedigo and Marsters can
be held liable in connection with the repairs to the House even though the
allegedly defective repairs were inspected by an engineer representing Fish.

 

III. Standards of Review








In
reviewing a traditional summary judgment, we consider whether the successful
movant at the trial level carried its burden of showing that there is no
genuine issue of material fact and that judgment should be granted as a matter
of law.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).  To be entitled to summary judgment, a defendant
must conclusively negate at least one essential element of each of the
plaintiff=s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex. 1997).  Under this traditional standard, we take as true all evidence
favorable to the nonmovant, and we make all reasonable inferences in the
nonmovant=s favor.  Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  If the movant=s motion and summary-judgment evidence facially establish its
right to judgment as a matter of law, the burden shifts to the nonmovant to
raise a genuine, material fact issue sufficient to defeat summary judgment.  Id.

In reviewing a no‑evidence summary judgment, we
ascertain whether the nonmovant pointed out summary‑judgment evidence of
probative force to raise a genuine issue of fact as to the essential elements
attacked in the no‑evidence motion.  Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 206B08 (Tex. 2002). 
We take as true all evidence favorable to the nonmovant, and we make all
reasonable inferences therefrom in the nonmovant=s favor.  Dolcefino,
19 S.W.3d at 916.  A no‑evidence motion for summary judgment must be
granted if the party opposing the motion does not respond with competent
summary‑judgment evidence that raises a genuine issue of material fact. 
Id. at 917.  When, as in this case, the order granting summary judgment
does not specify the grounds upon which the trial court relied, we must affirm
summary judgment if any of the independent summary-judgment grounds is
meritorious.    See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge)
L.L.C., 207 S.W.3d 801, 826 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied).

                                                    IV.
Analysis

A.      Which of
the claims asserted by the homeowner are before us in this appeal?

We first must determine which claims as asserted by Fish
against Marsters and Pedigo are before us in this appeal.   In his live
pleading, Fish asserted the following claims against Pedigo and Marsters: 

1.       Negligence.  Fish contends that both
Marsters and Pedigo negligently and improperly performed the original
construction and the repairs.

2.       Negligent Misrepresentation.  Fish
contends that both before and after his purchase of the House, and during the
repair process, Pedigo and Marsters made numerous representations that the work
was being performed properly and in a good and workmanlike manner.  Fish states
that such representations were false, and he relied on these statements to his
detriment, causing him to suffer damages.








3.       Breach of Contract.  Fish contends
that Pedigo and Marsters promised to make good and workmanlike repairs to the
House in a timely manner.  Fish alleges that this promise formed a contract,
which has been breached, causing him damages. 

4.       DTPA. Fish contends that Pedigo and
Marsters  violated sections 17.46 (5), (7), (20), (22), and (24) of the
DTPA.

5.       Statutory
Fraud. Fish contends that to the extent the alleged misrepresentations were
made knowingly, Pedigo=s and Marsters=s actions
constitute a violation of Chapter 27 of the Texas Business and Commerce Code. 

The trial court severed into this case all of the above
claims that Fish asserted against Marsters and all of the above claims that
Fish asserted against Pedigo as to the original construction of the House. 
These are the claims that are in the severed case in which this appeal has been
filed.  All of Fish=s claims against Pedigo as to the repairs
to the House after its original construction remain in the original case, which
the trial court stayed pending the appeal in this case.  These claims are not
involved in this case or this appeal.  Therefore, to the extent Fish argues
that this court should reverse the trial court=s summary
judgments as to his repair claims against Pedigo, these arguments are misplaced
because these claims are not before this court.  

B.      Did the
trial court err in granting summary judgment for the general contractor and its
owner?

Marsters asserted several grounds for summary judgment on
Fish=s claims as
related to both the original construction and the repairs.  We take each claim
in turn.[3]


 

 








1.       Homeowner=s Negligence
Claims against General Contractor

Marsters asserted the following
grounds as to Fish=s claims for negligence: 

!       The negligence claims are barred by the
applicable two-year statute of limitations.

!       Fish=s claims for negligent repairs and supervision fail as a
matter of law because Marsters owed no duty and had no control over the
repairs. 

!       There is no evidence of a negligence duty, a
breach, or proximate cause.  

 

On appeal, Fish contends that he filed suit within the
statute of limitations because he did not discover his damages until after he
purchased the House.  However, Fish fails to brief any argument as to why the
trial court erred in granting summary judgment on Marster=s no-evidence
grounds as to the essential elements of (1) breach of duty, (2) causation, and
(3) Marsters=s alleged negligence duty regarding the original
construction work. Without citing any authority, Fish asserts that his injuries
were proximately caused by negligent construction.  However, this is a
conclusory statement.  In briefing the traditional summary-judgment grounds
upon which Pedigo sought summary judgment, Fish argues there are fact issues as
to whether (1) his contract to purchase the House Aas is@ and the
inspection report negated proximate cause; and (2) the economic-loss rule bars
his negligence claims.[4]









Texas Rule of Appellate Procedure 38.1(h) requires
appellate briefs to Acontain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record.@  Tex.R.App. P. 38.1(h); Republic
Underwriters Ins. Co. v. Mex‑Tex, Inc., 150 S.W.3d 423, 427 (Tex.
2004).  Appellate courts must construe the Texas Rules of Appellate Procedure
reasonably, yet liberally, so that the right to appeal is not lost by imposing
requirements not absolutely necessary to effect the purpose of a rule. 
Republic Underwriters Ins. Co., 150 S.W.3d at 427.  Fish has not provided
any argument, analysis, or citations showing how the trial court erred in
granting summary judgment based on Marster=s no-evidence
grounds as to the essential elements of breach of duty, causation, or Marsters=s alleged
negligence duty regarding the original construction work. Even construing Fish=s brief liberally,
we cannot conclude that he has adequately briefed these issues.  See San
Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 337 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Fish is required to attack every independent ground
upon which the trial court could have granted summary judgment as to his
negligence claims.  See Ramco Oil & Gas Ltd., 207 S.W.3d at 826. 
Because Fish has failed to do so, we conclude the trial court did not err in
granting summary judgment as to his negligence claims against Marsters.

2.       Homeowner=s Remaining Claims against General
Contractor 

Among other things, Marsters asserted there is no evidence
of any of the following essential elements of Fish=s claims against
Marsters: 

Negligent Representation.  (1) Marsters made a representation
to Fish in the course of Marsters=s business, or in a transaction in which Marsters had a
pecuniary interest; (2) Marsters supplied false information for the guidance of
others; (3) Marsters did not use reasonable care or competence in obtaining or
communicating the information; (4) Fish justifiably relied on the
representation; and (5) Marsters=s negligent representation proximately caused Fish=s damages. 

Breach of Contract.  (1) the existence of a contract between Fish and
Marsters, (2) breach of that contract, (3) damages resulting from that breach. 

DTPA.  Marsters=s violation of sections 17.46 (5),
(7), (20), (22), and (24) of the DTPA.

Statutory Fraud. (1) a false representation of fact was made, (2) the
representation was made to induce Fish to enter a contract, (3) Fish relied
upon that representation in entering the contract, and (4) the false
representation caused Fish injury.













On appeal Fish has not
provided any argument, analysis, record citations, or legal authorities
addressing the trial court=s summary judgment as to the above no-evidence grounds.  Even
interpreting Fish=s brief liberally, we cannot
conclude that he has adequately briefed these issues.  See San Saba Energy,
L.P. v, 171 S.W.3d at 337.  Fish is required to attack every independent
ground upon which the trial court could have granted summary judgment as to
these claims.    See Ramco Oil & Gas Ltd., 207 S.W.3d at 826. 
Because Fish has failed to do so, we conclude the trial court did not err in granting
summary judgment as to Fish=s negligent-misrepresentation,[5]
breach-of-contract,[6]
DTPA,[7]
and statutory-fraud claims against Marsters.  Likewise, as to Fish=s attempt to recover punitive damages
against Marsters by alleging gross negligence, Fish supplies only four
conclusory statements in his brief, none of which are coupled with record
citations or legal authorities. Because Fish has inadequately briefed any
alleged errors regarding his allegation of gross negligence, these complaints
are waived.[8] 
Having found no meritorious argument for reversal as to any of Fish=s claims against Marsters, we
conclude that the trial court properly granted summary judgment as to these
claims.

 

C.      Did the
trial court err in granting the subcontractor=s traditional
motion for summary judgment on the homeowner=s claims regarding
the original construction? 

In its traditional motion for summary judgment, Pedigo
asserted several grounds for summary judgment on Fish=s claims against
Pedigo.[9] 
We first address the grounds asserted as to Fish=s negligence claim
against Pedigo, and then we address the remaining claims.

1.       Does the
homeowner=s negligence claim against the
subcontractor as to the original construction fail as a matter of law?

As to Fish=s negligence claim, Pedigo asserted that
summary judgment was proper because: (1) negligence during the initial
construction is barred by the two-year statute of limitations; (2) Fish is
estopped from asserting damages as a result of Pedigo=s repair work; (3)
any injury was not proximately caused by any alleged breach because Fish
purchased the House Aas is@; (4) the
inspection report negates proximate cause; and (5) any economic losses are barred
by application of the economic-loss rule.   On appeal, Fish contends that: (1) 
he filed his claim within the statute of limitations because limitations did
not begin to run until he bought the House or because the discovery rule tolled
the applicable statute of limitations, (2) he is not estopped from asserting
damages by his alleged control of the repair efforts; (3) Fish=s Aas is@ contract with the
original owner (Patel) does not negate proximate cause; (4) there is a fact
issue as to whether the real estate inspection report negates proximate cause;
and (5) there is a fact issue as to whether Fish=s negligence claim
is barred by the economic-loss rule.








Fish correctly states that his negligence claims are
governed by the two-year statute of limitations.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.003 (Vernon
Supp. 2005).  In this case, for Pedigo to be entitled to summary judgment based
on the statute of limitations, Pedigo had to prove when the claims accrued,
negate the applicability of the discovery rule, and prove as a matter of law
that the claims are time-barred.  See Burns v. Thomas, 786 S.W.2d
266, 267 (Tex. 1990).

Fish, relying on the discovery rule to toll limitations,
contends that a material fact issue exists as to whether he was afforded a
reasonable opportunity to discover the cause of his injury.  He contends that
there is a fact issue as to whether he relied on the inspection report or
relied on Marsters=s representations as to the condition of
the construction.   Fish further asserts that because his damages arise from
construction defects in the House, he could not have been damaged until after
he purchased the House.  Therefore, he asserts, his negligence cause of action
could not have accrued until, at the earliest, March 23, 2000, the date he
purchased the House.  This argument, however, does not reflect the correct
legal standard. 

Pedigo=s allegedly negligent work during the
construction of the House occurred more than two years before Fish filed this
suit.  However, under the discovery rule, the statute of limitations is tolled
until Fish had knowledge of facts that would have caused a reasonably prudent
person to have made an inquiry that would have led to the discovery of his
claims for negligent construction.  White v. Bond, 362 S.W.2d 295, 295B96 (Tex. 1962); Cornerstones
Mun. Util. Dist. v. Monsanto Co., 889 S.W.2d 570, 576 (Tex. App.CHouston [14th Dist.] 1994, writ
denied).  

In his deposition, Fish testified as follows:

!       Fish signed the earnest money contract for
the purchase of the House from Patel on February 7, 2000.   








!       After signing this contract, Fish had the
House inspected.  Fish reviewed the inspection report and Atook it seriously.@

!       Fish phoned Frank Marsters about a large
stain in the sheetrock in the first-floor ceiling outside the den door and
underneath the deck. In this location Fish had seen a stain measuring two to
two-and-a-half feet in diameter.  Fish called Marsters on the telephone and
asked for Marsters=s opinion about this stain. Fish
did not ask Marsters to inspect this stain; rather, he simply asked Marsters
what he suspected it could be.

!       Marsters stated that the House backed up to
the lake and moisture and wind coming off the lake probably were causing a
fungus or something growing up there and Ait needed to be taken care of.@  Accordingly to Fish, Marsters did
not state that the stain could not be caused by leakage from above, and he did
not say it could be.

!       Fish believes he told Marsters that it
appeared the deck was leaking and that there was a big spot on the ceiling.

!       Fish also asked Marsters about a stain in the
sheetrock running up and down the left side of a window in the den (hereinafter
ADen Window@). Fish observed a stain there that
made him think the House was taking on water in that area.  Fish asked Marsters
why the water could be getting in there and what he could do to fix it. 
Marsters responded that the House is a stucco home that needs to be maintained
and that it had been over a year since Marsters had been involved in the House.
Marsters stated that the House needed to be caulked and maintained.  

!       Marsters did not know about the stains prior
to Fish=s phone call, which occurred before
Fish purchased the House.  

!       The report of the home inspector=s February 17, 2000 inspection
mentions a leak by the Den Window. As of that date, Fish knew that his
inspection company had detected a leak at the Den Window and documented it;
however, Fish did not talk to the inspector about the leak because he already knew
the leak existed.

!       Fish reviewed the inspection report, and it
was important for Fish to understand what the inspector had found before Fish
made the decision to proceed with the purchase of the House.  Fish never talked
to the inspector about the report.

!       The report states that Athere was evidence of
water/moisture penetration at  rear windows (all windows, and exterior doors
should be sealed to prevent water/moisture penetration),@ a reference to the stain by the
Den Window.








!       The report also states that Athere was evidence of moisture
stains on ceiling at rear patio (suggest removal of upper balcony decking for
further review/inspection).@  However, before proceeding with closing on March 23, 2000, Fish did
not take any action regarding this suggestion.

!       After Fish presented Patel with a list of
items that needed to be taken care of, the parties agreed to reduce the
purchase price, for Fish to fix certain items, and for Fish to take certain
items Aas is.@

!       As of February 17, 2000, Fish knew about some
issues regarding leaks and stains at the House.  Fish bought the House with
this knowledge, and Patel did not make any warranties to Fish about the House. 


!       Months
later, when Fish took action to deal with these issues, he discovered the
damage for which he now seeks to recover.

Fish was aware of the issues regarding the leaks by
February 17, 2000.  As noted above, Fish discovered the Aleaks@ and potential Awater damage@ on or before
February 17, 2000.  The fact that he did not purchase the House until March 23,
2000, or begin repairs until several months after the purchase does not toll
the running of limitations.   The summary-judgment evidence proves as a matter
of law that, more than two years before he filed this suit on March 21, 2002,
Fish had knowledge of facts that would have caused a reasonably prudent person
to have made an inquiry that would have led to the discovery of his claims for
negligent construction.[10]









The case of Bayou Bend Towers Council of Co-Owners v.
Manhattan Construction Company, 866 S.W.2d 740 (Tex. App.CHouston [14th
Dist.] 1993, writ denied), is illustrative.    In Bayou Bend, the
plaintiff condominium association argued that the statute of limitations was
tolled until it discovered the cause of the leaks, not just the leaks
themselves.  Id. at 743.   This court rejected this argument and held
that the statute of limitations began to run when the association discovered
the existence of water leakage and cracks in precast panels, even though it did
not know the cause of the cracking problem.   Id. at 744.  Under
the applicable standard of review, the summary-judgment evidence conclusively
proves Pedigo=s limitations defense and negates the discovery rule
as a matter of law.   See Cornerstones Mun. Util. Dist., 889 S.W.2d at
576 (holding that discovery rule tolled limitations only until plaintiff
learned of damaged pipe, rather than until plaintiff discovered widespread
problems with the sewer system, because knowledge of the damaged pipe would
cause a reasonably prudent person to make an inquiry that would lead to the
discovery of the system-wide problems); Bayou Bend Towers Council, 866
S.W.2d. at 743B45 (concluding that, even under discovery rule,
limitations began to run upon discovery of water leaks in roof because this
discovery would cause a reasonably prudent person to make an inquiry that would
lead to the discovery of the cause of the leaks);  Tenowich v. Sterling
Plumbing Co., 712 S.W.2d 188, 190 (Tex. App.CHouston [14th
Dist.] 1986, no writ) (concluding that statute of limitations began running
upon discovery of multiple plumbing leaks, even though the full extent of the
damage was not discovered until later); Polk Terrace, Inc. v. Curtis,
422 S.W.2d 603, 605 (Tex. Civ. App.CDallas 1967, writ
ref'd n.r.e.) (concluding a reasonably prudent person would make inquiry after
masonry cracks appeared in house within first year of home ownership).   We
conclude that the trial court properly granted summary judgment as to Fish=s negligence
claims against Pedigo based on the statute of limitations.[11] 


2.       Did the trial court
correctly grant summary judgment as to the homeowner=s other claims against the subcontractor
regarding the original construction?








On appeal, the only alleged negligent misrepresentations
Fish has briefed relate to  repairs to the House performed after the original
construction.  The only contract Fish has briefed is an alleged contract under
which Pedigo purportedly agreed to repair the leaks and the stucco at the
House.  In addition, the only alleged DTPA violations Fish has briefed are
based on alleged statements by Pedigo that it would repair all window leaks,
flashing leaks, and stucco and roofing leaks in the back of the House and that
Pedigo would perform this repair work in a good and workmanlike manner. 
Furthermore, the only alleged statutory fraud Fish has briefed on appeal is
based on alleged misrepresentations by Pedigo regarding its repair of the
leaks.  However, Fish=s claims against Pedigo based on the
repairs to the House are not part of this case; therefore, none of the
arguments asserted by Fish present reasons for reversing the trial court=s summary judgment
as to Fish=s negligent-misrepresentation, breach-of-contract,
DTPA, and statutory-fraud claims regarding the original construction of the
House.  Pedigo=s arguments lack merit as to these claims.[12] 
Having found no meritorious argument as to any of Fish=s claims against
Pedigo, we conclude that the trial court properly granted summary judgment as
to these claims.[13]

V.   Conclusion 

Fish has not presented any argument showing that the trial
court erred in granting summary judgment as to any of his claims against
Marsters or as to any of his claims against Pedigo regarding the original
construction of the House.  

 

 








Accordingly, we overrule all of Fish=s issues and
affirm the trial court=s judgment.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed May 17, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.









[1]   Although Fish testified on numerous occasions
throughout his deposition that this call took place before he signed the
earnest money contract and before an actual inspection of the House, Marsters
does not recall making these statements to Fish.  There is also a dispute as to
whether Fish made this phone call before or after he obtained a formal
inspection report for the House.  However, resolution of this conflict is unnecessary
to the disposition of this appeal. 





[2]  We discuss in detail in our analysis below the
individual claims asserted by Fish against Pedigo and Marsters. 





[3]  When discussing the claims as related to Marsters,
we are referring to any claims made as to both the original construction and as
to the repair work made after the original construction. 





[4]  Fish also asserts that Pedigo=s allegedly negligent repairs caused his injuries;
however, Fish=s negligent-repair claims against Pedigo are not
before this court.





[5]  Fish does assert that he justifiably relied on
Pedigo=s alleged negligent representation that it would fix
the leaks; however, this claim is not against Marsters, and, in any event is
not before this court.





[6]  Fish does make a conclusory statement that he had a
contract with Marsters and Pedigo to repair the leaks and the stucco, and he
does provide argument in support of the proposition that a contract existed
between Fish and Pedigo regarding repair of the stucco and the leaks; however,
this argument is directed at Pedigo, not Marsters.  Although Fish bases this
argument on a proposal made by Pedigo and although Fish states in passing that
this is APedigo=s and Marsters= remediation proposal,@ Fish does not explain how a document prepared by Pedigo on its
letterhead constitutes a contract with Marsters.  In any event, the only
contract alleged in Fish=s petition is an alleged agreement to make good and
workmanlike repairs to the House in a timely manner.  Fish did not brief on
appeal or point out to the trial court summary-judgment evidence raising a
genuine fact issue as to the essential elements of such a claim against
Marsters.





[7]  In two pages of his appellate brief, Fish does
assert there is a fact issue as to his DTPA claims based on Marsters=s alleged misrepresentation that Marsters would
perform the repair work in a good and workmanlike manner; however, the only
evidence of such alleged statements Fish cites are statements made by Allen
Pedigo of Pedigo.  Even in this argument, Fish does not brief how there was a
fact issue as to the five alleged violations of the DTPA.  In any event, the summary-judgment
evidence did not raise a genuine fact issue as to whether Marsters violated
these DTPA provisions.





[8]  Even absent briefing waiver, Marsters correctly
asserted in its motion for summary judgment that  Fish cannot recover punitive
damages against Marsters based on gross negligence if Fish=s negligence claim fails as a matter of law.





[9]  When we refer to the claims asserted against Pedigo,
we refer only to those claims that relate to the original construction.  As
stated above, this case does not include all claims regarding repairs made
after the initial construction, and any claims asserted against Pedigo as
related to the repair work are not before us in this appeal.  





[10]  At oral argument, Fish=s counsel asserted that fraudulent concealment precluded the
application of limitations based on Marsters=s
statements to Fish in February 2000.  Fish, however, waived this issue by not
raising fraudulent concealment in his response to Pedigo=s motion for summary judgment.  See KPMG Peat
Marwick v. Harrison County Housing Fin. Corp., 988 S.W.2d 746, 749B50 (Tex. 1999) (holding that nonmovant waives
fraudulent-concealment issue by not raising it in his summary-judgment
response).  In any event, statements by Marsters could not possibly constitute
fraudulent concealment by Pedigo.





[11]  Fish also argues that Pedigo=s negligent repairs were a cause in fact of Fish=s alleged injuries; however, Fish=s negligent-repair claims against Pedigo are not
before this court.





[12]  As to Fish=s attempt to recover punitive
damages against Pedigo by alleging gross negligence, Fish supplies only four
conclusory statements in his brief, none of which are accompanied by record
citations or legal authorities. Because Fish has inadequately briefed any alleged
errors regarding his allegation of gross negligence, these complaints are
waived.  See Tex. R. App. P. 38.1(h). 
As noted, even absent briefing waiver, Pedigo correctly asserted in its motion
for summary judgment that Fish cannot recover punitive damages based on gross
negligence if Fish=s negligence claim fails as a matter of law.





[13]  Fish=s negligence,
negligent-misrepresentation, breach-of-contract, DTPA, and statutory-fraud
claims regarding the repairs to the House are still pending in a separate case
in the trial court and are not adjudicated by this appeal.