### Robert DAVENPORT and Jayne Edison, Appellants

v.

### DR. Samuel Maxwell ADU-LARTEY and Athletic Orthopedics and Knee Center, P.A. d/b/a AOK Orthopedics, Appellees

### NO. 01-16-00276-CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 8, 2017

Robert H. Bateman, Adam B. Chambers, BATEMAN|PUGH|CHAMBERS, P.L.L.C., 1811 Bering Drive, Suite 420, Houston, TX 77057, Steven J. Knight, 1200 Smith Street, Suite 1400, Houston, TX 77002, for Appellants.

Diana L. Faust, Kyle M. Burke, COOPER & SCULLY, P.C., 900 Jackson, Suite 100, Dallas, TX 75202, Frank N. Luccia, LUCCIA & EVANS, L.L.P., 8 Greenway Plaza, Suite 1450, Houston, TX 77046, for Appellees.

Panel consists of Justices Bland, Massengale, and Lloyd.

## OPINION

Michael Massengale, Justice

Robert Davenport and his wife sued Dr. Samuel Adu-Lartey and an orthopedic clinic for negligence in connection with back surgery. The trial court granted summary judgment in favor of the defendants, based on their limitations defense. The appellants contend that they filed suit within the applicable limitations period and, alternatively, that limitations had not run because Dr. Adu-Lartey fraudulently concealed both his alleged negligence and the resulting injury.

We affirm.

## Background

Robert Davenport worked as a project superintendent in the construction industry. In September 2012, he stepped into a hole in his yard, wrenching his back and causing immediate pain in his left side, wrapping around his ribs. Two weeks later, he went to the UTMB–Galveston emergency room, complaining of the same pain. The ER personnel performed diagnostic tests, then advised him to see an orthopedic surgeon. Over the following seven days, he saw a cardiologist and his primary care provider and underwent a series of tests, including a CT scan at Houston Medical Imaging.

Davenport previously had been treated by Athletic Orthopedics and Knee Center, which does business as AOK Orthopedics, for foot pain. Because he was familiar with the clinic, he went to AOK, where he saw orthopedic surgeon Dr. Adu-Lartey. Dr. Adu-Lartey or his staff initially gave Davenport epidural steroid injections at the site of his pain. When these proved unsuccessful, Dr. Adu-Lartey ordered a diagnostic test called a "CT myelogram" and x-rays. He diagnosed spinal cord narrowing at various locations in Davenport's back, and he recommended surgery.

On September 26, 2012, Dr. Adu-Lartey performed surgery on Davenport's back. The pre-operative plan included a discectomy on the T9/T10 and T10/T11 discs, as well as laminectomy of the T9 and T10 vertebrae. According to Davenport, however, Dr. Adu-Lartey struck and contused— that is, bruised—his spinal cord during the surgery, then abandoned the surgery after completing only one level of discectomy and laminectomy, instead of the planned two levels. Davenport alleges that when he awoke in the post-operative recovery room, he "immediately knew something was wrong." He "immediately complained" to a nurse of "substantial numbness in his right

hip and leg." Dr. Adu-Lartey arrived a short time later, and Davenport repeated his complaint. According to Davenport, he continued to complain of numbness over the following days, but Dr. Adu-Lartey attributed the numbness to "bright red" nerve roots in his back and the position in which he was placed on the operating table. A CT scan performed the day after the surgery showed both T9 and T10 laminectomies. Several days after surgery, Davenport was referred and discharged to Katy Rehab Hospital, where he spent 10 days recovering and receiving additional care. He also underwent MRIs at a variety of facilities over the days following the surgery, including Methodist West Imaging Center, and he received outpatient physical therapy at UTMB Medical Center in Galveston.

Davenport continued to seek treatment for numbness. In September 2013, after seeing a variety of other physicians, one of these physicians referred him to Dr. Daniel Kim, a neurosurgeon at UT Health Science Center in Houston. On September 26, 2013—a year to the day after Dr. Adu-Lartey's operation—Dr. Kim performed surgery to address Davenport's ongoing complaints of back pain. According to Davenport, Dr. Kim discovered that Dr. Adu-Lartey had not completed all planned aspects of the 2012 surgery. Although the 2013 surgery alleviated the back pain, Davenport continues to suffer leg numbness, reduced strength, and unsteadiness. He has been unable to return to his job since his 2012 surgery.

On September 26, 2014, exactly two years after Davenport's original back surgery, his lawyer sent a letter to Dr. Adu-Lartey and AOK. The letter advised that Davenport had retained counsel and intended to pursue a health care liability claim against Dr. Adu-Lartey and AOK. The letter explicitly stated that it was being provided pursuant to Texas Civil Practice and Remedies Code Section 74.051, "providing written notice of a health care liability claim ... 60 days before the filing of a suit before a court of competent jurisdiction." Attached to the letter was a signed authorization form for the release of Davenport's health information.

The form authorized Dr. Adu-Lartey to obtain Davenport's protected health information. The form identified five doctors other than Dr. Adu-Lartey who "examined, evaluated, or treated" Davenport "in connection with the injuries alleged to have been sustained in connection with the claim." This list did not include other physicians or health care providers who treated him in connection with his back injury, including: Memorial Hermann–Memorial City Medical Center, where the 2012 surgery was performed; UTMB–Galveston, where he initially presented to the emergency room, and where he underwent physical therapy after the 2012 operation; Katy Rehab Hospital, which treated him after he was discharged from Memorial Hermann; Methodist Hospital; and numerous outpatient imaging centers that saw him. The list also did not include Dr. Adu-Lartey or AOK.

The authorization form also identified a total of eight physicians or health care providers who "examined, evaluated, or treated" Davenport "during a period commencing five years prior to the incident" made the basis of the claim. As permitted by the statutory form, Davenport identified as "Excluded Health Information" a list of three physicians for whom the authorization did not apply because he contended that such health care information was not relevant to the damages being claimed or to his physical, mental, or emotional condition arising out of the claim.[1]

1. With respect to Dr. Alex Su and Dr. Clive Fields, the authorization excluded records

Dr. Adu-Lartey and AOK attempted to investigate Davenport's claim, but they encountered numerous obstacles. Twenty days after the initial notice, on October 16, 2014, Dr. Adu-Lartey's insurer, Texas Medical Liability Trust ("TMLT"), wrote to Davenport's counsel and requested an amended authorization listing Memorial Hermann hospital. Twenty-five days later, on November 10, 2014, TMLT repeated the request. Three days later—on November 13, 2014, 48 days after the initial notice—Davenport's counsel provided a second authorization that added Memorial Hermann, but it was undated. On December 17, 2014—more than 80 days after the initial notice and after this suit had been filed—TMLT informed Davenport's counsel that Memorial Hermann had rejected the undated authorization and refused to release any records under it. Two weeks later, Davenport's counsel sent a dated authorization to TMLT. And on April 15, 2015—201 days after the initial notice—Davenport's counsel sent supplemental authorizations to Dr. Adu-Lartey and AOK, adding more than a dozen providers who treated Davenport in connection with the complaints that form the basis of this suit and four providers who treated him during a period commencing five years before the 2012 surgery.[2]

Meanwhile, on December 10, 2014—75 days after the initial notice and two years and 75 days after the 2012 surgery—Davenport and his wife filed their lawsuit. They alleged that Dr. Adu-Lartey concealed what happened during surgery. In particular, they alleged that Dr. Adu-Lartey falsely recorded in the post-operative report, prepared a few days after the 2012 surgery, that he operated on both the T9/T10 and T10/T11 discs. They also alleged that Dr. Adu-Lartey billed and received payment for completing procedures in both locations (though he failed to perform both), failed to obtain informed consent for the 2012 surgery, failed to apprise Davenport of the risks and benefits of the surgery, failed to manage Davenport's condition conservatively, failed to obtain proper evidence supporting surgery, and failed to provide proper staff and equipment for the surgery. They complained that Davenport was injured by the alleged spinal cord contusion and by being forced to repeat the surgery due to Dr. Adu-Lartey's alleged failure to complete it.

Dr. Adu-Lartey moved for summary judgment on the grounds that the claims were barred by the applicable two-year statute of limitations, and that the limitations period was not tolled by the original notice of claim and authorization to release medical records. Dr. Adu-Lartey filed the motion and served notice of a hearing, but Davenport did not respond. The trial court granted summary judgment to Dr. Adu-Lartey, noting the lack of a response.

The appellants moved for leave to file a response and for reconsideration of the motion for summary judgment, which the

related to "treatment as general practitioner and primary care physician prior to September 26, 2012." With respect to Dr. Baxter, an AOK physician, the authorization excluded any records related to "treatment of torn plantar fascia."

2. The providers identified in the April 2015 authorizations who were not named in the September 2014 authorization were: Memorial Hermann–Memorial City Hospital; Memorial Hermann Imaging Center; Dr. Uday Doctor; Dr. Vladimir Redco of Pain & Health Management Center; a Walgreens pharmacy; Houston MRI and Imaging; Gunjan Patel of Memorial Hermann–Memorial City Hospital; Hermann Rehabilitation Hospital; UTMB–Galveston; Sheila Jacobson, MD; James Stafford of the Baylor College of Medicine; Methodist Imaging Center–West Houston; AOK; Jack Jenson of AOK; Kelsey-Seybold; and Memorial Health.

trial court granted over Dr. Adu-Lartey's objection. While that motion was pending, AOK also moved for summary judgment, arguing that limitations barred the claims. Davenport responded to both motions for summary judgment, contending that the September 2014 notice of claim and authorization for release of records extended the limitations period and that the suit was filed timely during the extended period. The parties submitted affidavits and supporting documents as evidence of their respective positions. Davenport and his wife also amended their petition to allege that Dr. Adu-Lartey fraudulently concealed his negligence, preventing discovery of their claims until at least September 2013, when Dr. Kim "observed that Dr. Adu-Lartey possibly contused [Davenport's] spinal cord during the September 26, 2012 surgery."

After reconsidering its prior order, the trial court confirmed its summary judgment in favor of Dr. Adu-Lartey. It subsequently granted summary judgment in favor of AOK, disposing of all remaining causes of action for trial. This appeal followed.

## Analysis

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment is required either to negate conclusively at least one essential element of the plaintiff's cause of action or to establish conclusively each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). To determine whether there is a disputed issue as to a material fact, we consider evidence favorable to the nonmovant as true and draw every reasonable inference in its favor, resolving all doubts in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548–49.

When, as in this case, the trial court's order granting summary judgment does not specify its grounds, "we may affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). We will only consider as grounds for reversal issues that were "expressly presented to the trial court by written motion, answer or other response." Tex. R. Civ. P.166a(c).

## I. Limitations

In their first three issues, the appellants argue that summary judgment was improper because the September 26, 2014 notice of claim and authorization to release records tolled the statute of limitations for 75 days, and they filed their suit by the end of that period. These issues all depend on whether the September 26, 2014 authorization to release records substantially complied with the Civil Practice and Remedies Code.

Health care liability claims in Texas are governed by the Texas Medical Liability Act. The purpose of the statute is "to eliminate frivolous healthcare-liability claims, not potentially meritorious ones." *E.g., Hebner v. Reddy*, 498 S.W.3d 37, 39 (Tex. 2016). In interpreting the statute, we are mindful that there are constitutional limitations upon the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits. *See id.* at 43 (citing *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011)).

Health care liability claims are subject to a two-year statute of limitations. Such

claims must be brought "within two years from the occurrence of the breach or tort or from.the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." TEX. CIV. PRAC. & REM. CODE § 74.251(a); *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 835 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

■ The statute also requires that defendants receive presuit notice of a health care liability claim, at least 60 days before suit is filed. *See* TEX. CIV. PRAC. & REM. CODE § 74.051(a). The notice must be accompanied by an "authorization form for release of protected health information as required" under Section 74.052 of the Civil Practice and Remedies Code. *Id.* If a claimant provides the presuit notice and health information authorization form, the limitations period is tolled "to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties." *Id.* § 74.051(c); *see also Kovaly v. Kuruvanka*, 497 S.W.3d 539, 550–51 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (although notice and authorization form should be sent to each defendant, notice and authorization form sent to at least one defendant tolls limitations with respect to all defendants and potential defendants). The purpose of the presuit notice requirement, including the authorized release of health information, "is to encourage negotiations and settlement of disputes prior to suit, thereby reducing litigation costs." *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 73 (Tex. 2011); *see also Mitchell*, 376 S.W.3d at 836. "The Legislature intended that 'by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit · is filed, the statute [would] provide[ ] an opportunity for health care providers to investigate claims and possi-

bly settle those with merit ·at an early stage.' " *Carreras*, 339 S.W.3d at 73 (alterations in original, .quoting *In re Collins*, 286 S.W.3d 911, 916–17 (Tex. 2009)); *Garcia v. Gomez*, 319 S.W.3d 638, 643 (Tex. 2010).

The content of the authorization form for release of protected health information is specified by Section 74.052(c) of the Civil Practice and Remedies Code, which provides, in relevant part:

B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as the written and is specifically described as follows:

1. The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompanying Notice of Health .Care Claim. (Here list the name and current address of all treating physicians or health care providers). This authorization shall extend to any additional physicians or health care providers that may in the future evaluate, examine, or treat _____ (patient) for injuries alleged in connection with the claim made the basis of the attached Notice of Health Care Claim;

2. The health information in the custody of the following physicians or health care providers who have examined, evaluated, or treated _____ (patient) during a period commencing five years prior to. the incident made the basis of the accompanying Notice of Health Care Claim. (Here list the

name and current address of such physicians or health care providers, if applicable.)

TEX. CIV. PRAC. & REM. CODE § 74.052(c).

■ In his motion for summary judgment, Dr. Adu-Lartey contended that Davenport failed to provide the statutory medical records authorization because he failed to include all known medical providers. Dr. Adu-Lartey noted that a report of a medical examination attached to the appellants' petition identified health care providers who had treated Davenport yet were not included on the authorization form. Dr. Adu-Lartey also claimed to be "prevented from obtaining" his own records of Davenport's treatment because he "was no longer associated with AOK," which was not included on the authorization form.

Texas courts consistently have held that a claimant's complete failure to provide an authorization form as prescribed by Section 74.052 precludes the tolling of limitations pursuant to Section 74.051(c). *See Carreras*, 339 S.W.3d at 74. Our court has held further that a HIPAA-compliant form that lacked important components of the Section 74.052 form—namely identification of the entity authorized to receive information and identification of treating physicians for five years before the incident giving rise to the claim—likewise failed to support the tolling of limitations. *See Mitchell*, 376 S.W.3d at 838. A blank medical-records release form containing only the claimant's signature also was held to be inadequate. *See Brannan v. Toland*, No. 01-13-00051-CV, 2013 WL 4004472, at *2 (Tex. App.—Houston [1st Dist.] Aug. 6, 2013, pet. denied) (mem. op.).

Dr. Adu-Lartey and AOK contend that these and other similar precedents compel the conclusion that the defects in Davenport's records authorization prevented the tolling of limitations. However, the important distinction of this case is that Daven-

port used the correct form, and he provided some, but not all, of the information required on the form. Despite these shortcomings, the appellants contend that the records authorization substantially complied with the statutory requirement. While our court has evaluated claims of substantial compliance in prior cases, we have declined to find substantial compliance when the form either failed to include all the information required by the statute, or the claimant failed to complete the form.

We recently have decided a case hinging on the adequacy of an authorization form which included all the statutorily required components, while the claimant provided some but not all of the responsive information. In *Johnson v. PHCC-Westwood Rehabilitation & Health Care Center*, 501 S.W.3d 245 (Tex. App.—Houston [1st Dist.] 2016, no pet.), the authorization form at issue identified, in connection with the injuries alleged to have been sustained in connection with the claim, one health care provider, one physician, and two nurses affiliated with the health care provider but identified only by their first names. *Johnson*, 501 S.W.3d at 248. Excluded from the authorization form were five other treating physicians and two other health care providers who provided treatment related to the alleged injuries, whose identities came to light at a later stage of litigation, in response to interrogatories. *Id.* Similarly, the authorization form failed to provide a complete list of physicians or health care providers who have examined, evaluated, or treated the patient during a period commencing five years prior to the incident made the basis of the accompanying notice of health care claim. *Id.* at 248–49. These lists of health care providers were characterized as "materially incomplete," which, "for investigative purposes," made them "equivalent to no disclosure." *Id.* at 251.

Accordingly, *Johnson* rejected the argument that the authorization form "substantially complied" with the statute, noting that the failure to identify all health care providers could have thwarted the defendants' ability to retrieve a material portion of relevant records, thus interfering with the presuit evaluation the statute is intended to encourage. *Id.*

Courts have not required in all cases perfect compliance with the statutory authorization form.[3] In *Butler v. Taylor*, 981 S.W.2d 742 (Tex. App.—Houston [1st Dist.] 1998, no pet.), the court held that a notice tolled limitations even though it was sent by United States Express Mail, not by certified mail as required by the statute. *Butler*, 981 S.W.2d at 743. The defendant in that case received the notice and could not identify any harm due to the method of service. *Id.*

In another case, *Mock v. Presbyterian Hospital of Plano*, 379 S.W.3d 391 (Tex. App.—Dallas 2012, pet. denied), an authorization form was completed erroneously by naming the claimant's attorney in the form's blank where instead it should have named the physician or health care provider being authorized to obtain protected health information. *Mock*, 379 S.W.3d at 394. The court observed that the form "correctly tracked the statutorily prescribed text" and apart from the apparently "inadvertent mistake," the form "complied with the statutory requirements, satisfied the legislative purpose, and triggered the tolling of the limitations period." *Id.* at 395. Notably, the mistake at issue in *Mock*, which the court noted could be "fixed quite easily," *id.* at 395 n.3, was obvious on the face of the document.

In contrast to *Mock*, the error at issue in this case and in *Johnson*—omissions from the lists of health care providers—would not be self-evident unless the party receiving the notice had independent knowledge of the other health care providers. To the extent the authorization in this form in this case failed to list Dr. Adu-Lartey and AOK, that was an omission that would have been self-evident to both Dr. Adu-Lartey and AOK, and to the extent either of them needed the authorization form to secure relevant medical records from the other, as in *Mock*, it was an error susceptible of being "fixed quite easily," which therefore would not frustrate the purpose of providing the form. Even more like *Mock*, the identification of Dr. Adu-Lartey but not AOK as parties authorized to obtain medical records was likewise an error that could be recognized from the face of the document and "fixed quite easily." On the other hand, as was the case in *Johnson*, Davenport's failure to include his other health care providers who were not known already to Dr. Adu-Lartey or AOK did interfere with their ability to conduct a presuit investigation.

The appellants argue that presuit investigation was still possible, based on the records that could be obtained from the authorization form, the appellants' own experts' evaluations which were provided, and Dr. Adu-Lartey's and AOK's own records, which would be among the more important medical records relevant to the claim. None of these circumstances, however, mitigate the problem that Dr. Adu-Lartey and AOK were not able to access other critical medical records that are required to be included in the authorization

---

**3.** In addition to the cases discussed above, the appellants also rely on *Rabatin v. Kidd*, 281 S.W.3d 558 (Tex. App.—El Paso 2008, no pet.), to support their argument that they should be held to a forgiving standard of substantial compliance. As noted in *Johnson*, however, *Rabatin* is not consistent with the later-decided Supreme Court decision in *Carreras*. *See Johnson*, 501 S.W.3d at 251 (citing *Carreras*, 339 S.W.3d at 74).

form, and without that information they could not assess the claim adequately before the filing of suit, as intended by the statute. *See Mitchell*, 376 S.W.3d at 838 (authorization form "must provide authorization to 'retrieve [the claimant's] medical records from other medical providers in order . . . to evaluate the strength of [the claimant's] claim with the legislative goal of encouraging settlement' " (quoting *MacFarlane v. Burke*, No. 01-10-00409-CV, 2011 WL 2503937, at *3 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.) (mem. op.))). Similarly, the fact that the partial disclosures made by the appellants facilitated discovery requests made later in the course of litigation do not serve the statutory purpose of encouraging a presuit resolution.

It is undisputed that Davenport sent both a notice of his claim and an authorization for release of medical records on the two-year anniversary of the 2012 surgery performed by Dr. Adu-Lartey and filed suit 75 days later. If the limitations period began to run on the date of the surgery, then the suit is time-barred, unless the limitations-tolling provision of Section 74.051(c) applies.

■ As the appellants concede, "For tolling to apply, the authorization form must allow the defendant to obtain medical records from other providers to help in evaluating the claim." "[T]he notice requirement's purpose of obtaining information is not fulfilled if [the defendant] is deprived of the opportunity to explore [the plaintiff's] past medical history, including these preexisting conditions, for purposes of evaluating (and potentially settling) his claim." *Myles v. St. Luke's Episcopal Hosp.*, 468 S.W.3d 207, 210-11 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (quoting *Mitchell*, 376 S.W.3d at 838).

Taking all of the summary-judgment evidence in the light most favorable to the appellants, we conclude that the authorization form that Davenport sent to Dr. Adu-Lartey and AOK on the last day of the limitations period omitted crucial information. It omitted physicians who treated Davenport in the five-year period preceding the 2012 surgery, numerous persons and entities involved in the 2012 surgery at the heart of this case, and a majority of the providers who treated Davenport after the 2012 surgery. In practical terms, it did no more to aid a presuit investigation than if it had not disclosed any physicians who treated Davenport in the five years preceding the 2012 surgery. Such defects are fatal to a form's ability to toll the limitations period. *See Johnson*, 501 S.W.3d at 251. As a result of its defects, the September 26, 2014 form was inadequate to satisfy the legislative purpose of enabling a presuit investigation by Dr. Adu-Lartey or AOK. It therefore failed to toll the limitations period under Section 74.051(c), which expired the same day the form was sent. Accordingly, we overrule the appellants' first three issues.

## II. Fraudulent concealment

■ In their final issue, the appellants argue that Dr. Adu-Lartey acted to conceal and deny his negligence, and the limitations period therefore was tolled by the doctrine of fraudulent concealment. As support for their fraudulent concealment claim, the appellants rely on (1) the subsequent report by Dr. Kim, which they contend shows that Dr. Adu-Lartey failed to complete the 2012 surgery; (2) Dr. Adu-Lartey's post-surgery notes, which stated that he did complete the surgery; (3) Dr. Adu-Lartey's alleged failure "to fully disclose to Davenport what happened during the surgery;" and (4) the report of their expert, Dr. Phillip Williams, who opined that the combined medical records show

that Dr. Adu-Lartey did not complete the surgery.

▇▇▇ Fraudulent concealment may operate to toll limitations. *Baptist Mem'l Hosp. v. Arredondo*, 922 S.W.2d 120, 122 (Tex. 1996). "The doctrine of fraudulent concealment provides that where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from a party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of its right of action, or should have learned of it through the exercise of reasonable diligence." *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 746 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (citing *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)). The doctrine is available as a defense to limitations in medical malpractice cases. *E.g.*, *Shah v. Moss*, 67 S.W.3d 836, 845–46 (Tex. 2001); *Borderlon*, 661 S.W.2d at 909. "Once a defendant has conclusively established the affirmative defense of limitations, the burden rests with the plaintiff to come forth with proof that raises a fact issue regarding the elements of fraudulent concealment." *Casey v. Methodist Hosp.*, 907 S.W.2d 898, 903 (Tex. App.—Houston [1st Dist.] 1995, no writ) (citing *Nichols v. Smith*, 507 S.W.2d 518, 521 (Tex. 1974)).

▇▇▇ This court has stated that to show that he is entitled to the estoppel effect of fraudulent concealment, the plaintiff must show that "the defendant had: (1) actual knowledge of the wrong; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong." *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 436 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *accord Dernick Res., Inc. v. Wilstein*, 312 S.W.3d 864, 878 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Other courts have added the plaintiff's

"reasonable reliance on the deception" to the elements that a plaintiff must prove to establish fraudulent concealment. *E.g.*, *Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 895 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Based on subsequent decisions of the Supreme Court of Texas, we agree that a showing of reasonable reliance is required. *See, e.g., Exxon-Mobil Corp. v. Lazy R Ranch*, 511 S.W.3d 538, 545 (Tex. 2017) (rejecting fraudulent-concealment defense to limitations in part because there was no evidence that plaintiffs relied on reports on which defense was premised). Reliance may be dispositive of whether the doctrine of fraudulent concealment applies or, if it applies, when it ceases to apply, because the doctrine "only tolls the statute of limitations until 'the fraud is discovered or could have been discovered with reasonable diligence.'" *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)). Accordingly, fraudulent concealment is inapplicable or ceases to toll limitations if a plaintiff purports to have relied on a misrepresentation or omission but was put on notice of the alleged harm by other means and a diligent inquiry could have led to the discovery of the truth. *See id.* at 928; *Etan Indus. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (per curiam). "Knowledge of facts, conditions, or circumstances which would cause a reasonable person to make inquiry leading to the discovery of the concealed cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes." *Bayou Bend Towers*, 866 S.W.2d at 747.

▇▇▇ In considering the summary-judgment evidence, we must consider whether facts have been judicially admitted by a party, and we may not consider evidence introduced by that party contrary

to such an admission. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *In re Spooner*, 333 S.W.3d 759, 764 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding). "Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Holy Cross Church*, 44 S.W.3d at 568 (quoting *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). "A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact." *Id.* (citing *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 467 (Tex. 1969)); *see also Spooner*, 333 S.W.3d at 764 ("A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it.").

The appellants have judicially admitted facts that conclusively negate their reliance on the alleged misrepresentations or omissions of Dr. Adu-Lartey. In their petition, they alleged that "Dr. Adu-Lartey assured Davenport that he would be down 5–10 days" and "that Davenport would make a quick and full recovery after the surgery." However, they admitted that Davenport "immediately knew something was wrong" upon awaking from anesthesia on the day of the 2012 surgery. He "immediately complained" to a nurse of "substantial numbness in his right hip and leg," the same symptoms that lead him to file this suit. He repeated his complaints to Dr. Adu-Lartey a short time later.

Davenport, however, did not rely on Dr. Adu-Lartey. Instead, he underwent numerous tests and examinations to determine the cause of his numbness over the course of a year, ultimately opting to have additional surgery to mitigate it. In other words, not only did Davenport have knowledge of "facts, conditions, or circumstances which would cause a reasonable person to make inquiry leading to the discovery of" his alleged injuries, *see Bayou Bend Towers*, 866 S.W.2d at 747, he actually made such an inquiry, which culminated in a corrective surgery. His knowledge "is in the law equivalent to knowledge of the cause of action for limitation purposes." *Id.* The statute of limitations commenced as a matter of law once he was aware that something was amiss, *Etan Indus.*, 359 S.W.3d at 623–24, which he admitted was "immediately" after Dr. Adu-Lartey's surgery. As such, the appellants may not rely on the doctrine of fraudulent concealment.

The appellants argue that Dr. Adu-Lartey and AOK did not preserve the argument that Davenport was aware of his claim immediately after surgery. But Dr. Adu-Lartey and AOK never bore the burden to disprove the fraudulent-concealment argument because the appellants adduced no evidence in support of it. Rather, the appellants bore the burden to "come forth with proof that raises a fact issue regarding the elements of fraudulent concealment." *Casey*, 907 S.W.2d at 903 (citing *Nichols*, 507 S.W.2d at 521). Instead, they judicially admitted that Davenport "immediately knew something was wrong" on awakening from the 2012 surgery, "immediately" sought help from a nurse and from Dr. Adu-Lartey, and spent a year investigating his injury before having additional surgery to correct the alleged injuries. Having made these admissions, the appellants are estopped from disputing Davenport's knowledge of his injury on the date of the surgery or introducing evidence to the contrary. *Holy Cross Church*, 44 S.W.3d at 568; *Spooner*, 333 S.W.3d at 764.

We hold that the appellants failed to raise a fact question regarding their allegation that Dr. Adu-Lartey fraudulently concealed negligence during the 2012 sur-

gery. Accordingly, we overrule their final issue on appeal.

## Conclusion

We affirm the judgment of the trial court.