In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00022-CV**

**LEONARD THOME, Appellant**

**V.**

**DOROTHY HAMPTON, Appellee**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-198,545**

## MEMORANDUM OPINION

The principal question in this appeal is whether the pre-suit notice of a lawsuit, a notice the attorney who represented the plaintiff served on the health care provider whom the attorney then later sued on behalf of his client, tolled the two-year statute of limitations, the statute that applies to the plaintiff's health care liability claim.[1] On appeal, the health care provider (the appellant here) argues the pre-suit notice

---

[1]Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) (Limitations on Health Care Liability Claims).

that he received before he was sued did not toll the two-year statute because the notice was unaccompanied by a release that authorized him to obtain the information prescribed for such authorization under the Act.[2] In response to that argument, the plaintiff (the appellee here and the party that prevailed in the trial) argues the health care defendant failed to meet his burden to show he was prejudiced by the variances in the authorization that accompanied the pre-suit notice as compared to the Act. In addition to arguing the two-year statute of limitations bars the plaintiff's suit as a matter of law, the appellant argues the evidence is insufficient to support the jury's verdict as to whether he was negligent and whether the negligence, if any, was a proximate cause of the appellee's injury.

We conclude the release authorizing the appellant to obtain the appellee's medical records is noncompliant with the form prescribed by the Legislature, as that form is described in section 74.052 of the Texas Medical Liability Act.[3] Comparing

---

[2]*Id.* § 74.051(a), (c) (providing that when a person or the person's agent, who is asserting a health-care liability claim, gives the physician or health care provider written notice of the health-care liability claim 60 days prior to suit with an authorization to release the patient's records relevant to the suit in the form prescribed by the Legislature, the pre-suit notice tolls "the applicable statute of limitations to and including a period of 75 days following the giving of the notice"); *id.* § 74.052(c) ("The medical authorization required by this section shall be in the following form . . . ."). Although the Legislature amended several of the sections of the Texas Medical Liability Act, we cite in option, including section 74.052(c) since Hampton's cause of action accrued, there are changes in the sections we have cited that are relevant to the appeal. For convenience, we cite the current version of the Act when citing the Act in the opinion.

[3]*Id.* § 74.052(c).

the form the appellant received from Hampton's attorney with the form described in the statute, we further conclude the variances between the forms are material in the case at issue because Hampton omitted health care providers who created records relevant to both her preexisting conditions, which had the potential to explain the cause of her fall, and to the picture of her health before the fall and after she achieved her maximum medical recovery following the fall. Because the variances were material, we conclude: (1) the tolling exception does not apply and did not prevent limitations from expiring before plaintiff sued, as a matter of law; and (2) the trial court erred by failing to grant the defendant's post-trial Motion for Judgment Notwithstanding the Verdict, in which the defendant argued limitations expired on the plaintiff's suit just over two months before she sued.[4]

Background

In March 2014, the evidence in the trial shows that Dr. Leonard Thome was working as a hospitalist at The Medical Center of Southeast Texas in Pt. Arthur, Texas.[5] On several occasions between March 25 and March 28, 2014, Dr. Thome saw Dorothy Hampton after she was admitted to and underwent abdominal surgery at the hospital to repair her hernia there.

---

[4]*Id*. § 74.251(a).
[5]*Hospitalist*, Merriam-Webster Online (2022) ("a physician and especially an internist who specializes in providing and managing the care and treatment of hospitalized patients").

On March 26, 2014, around 4:00 that afternoon, Dr. Barry Miller, a surgeon with privileges at The Medical Center, performed a laparoscopic surgery to repair Hampton's abdominal hernia, correcting the problems that he believed were the source of her abdominal pain. Hampton's medical records, admitted into evidence in the trial, show that while Hampton was hospitalized in March 2014, she suffered from several preexisting conditions apart from the hernia, which resulted in her hospitalization and surgery. These included end-stage renal disease, chronic congestive heart failure, and pericardial disease.

At trial, one of the central issues in Hampton's health care liability case concerned what caused her to faint in a 12-24-hour period after Dr. Thome discharged her from The Medical Center. In the suit, Hampton alleged she lost consciousness, fell, and injured her shoulder because Dr. Thome, on March 28, 2014, discharged her to soon and sent her home. Hampton's medical records show Dr. Thome discharged Hampton at approximately 6:00 p.m. on March 28. And no one disputes Hampton was discharged to her home. Upon Hampton's discharge, her medical records reflect that Dr. Thome noted she "is very limited in her ability to ambulate and uses a wheelchair and can use a walker short distances by her report." The records reflect that Dr. Thome told Hampton to seek further care in follow up visits with either Dr. Miller (her surgeon) or with her family physician.

4

Hampton was readmitted to The Medical Center on March 29, 2014, after falling at her home. According to the records, Hampton told Dr. Gilberto Agustin, one of The Medical Center physicians who saw her after she was admitted on March 29, that she "could not recall anything for about 24 hours" before neighbors called the police and found her on the floor. Six days later, Hampton was released again from The Medical Center, but this time, she was released to a skilled nursing facility. When released, the records of The Medical Center reflect that Hampton was "markedly debilitated and weak from apparent muscular atrophy[.]"

In November 2015, Hampton's attorney sent Dr. Thome a certified letter, notifying him that Hampton intended to sue him, claiming he had violated the standards of care applicable to physicians responsible for discharging patients from hospitals in deciding Hampton could be discharged and then sending her home. With the letter, the attorney sent Dr. Thome a form authorization, which allowed Dr. Thome to obtain records from two health care providers that Hampton's attorney apparently thought were relevant to Hampton's health care liability claim.

The authorization form authorized Dr. Thome to obtain medical records from: (1) The Medical Center of Southeast Texas; and (2) The Beaumont Bone and Joint Institute. On March 28, 2016 (the two-year anniversary from Hampton's March 28, 2014 release from the hospital) Hampton did not file her lawsuit. But just two months later, Hampton sued Dr. Thome in a district court in Jefferson County, Texas. In the

5

suit, Hampton alleged that Dr. Thome violated the standards of care applicable to physicians responsible for discharging patients from hospitals, alleging it was too early for her to be discharged, given her condition, which led to the fall that later occurred in a 24-hour period of her discharge from the hospital while she was home.[6]

The case was tried to a jury in May 2019. When the jury returned, it found Dr. Thome negligent and found his negligence proximately caused Hampton's injury. As to non-economic damages (like pain, suffering, mental anguish, and physical impairment) the jury awarded Hampton $550,000 in damages.[7] As to economic damages, the jury awarded Hampton $5,678 for the medical expenses she incurred in the past, which it found were reasonable in amount and related to the fall.

After the trial, however, the trial court reduced the jury's award to $255,678 because there are damages caps that apply to claims filed under the Texas Medical Liability Act, a cap that prevented Hampton from recovering more than $250,000 for the noneconomic damages component of the damages awarded by the jury.[8] In

---

[6]Prior to trial, Dr. Thome filed a traditional motion for summary judgment based on his statute of limitations defense. The trial court, however, denied the motion.

[7]The jury awarded Hampton noneconomic damages for past physical pain and mental anguish, future physical pain and mental anguish, past physical impairment, and future physical impairment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(12) (defining these damages as "noneconomic damages").

[8]*See id*. § 74.001(a)(20) (defining "noneconomic damages" as meaning the same as that assigned to the term in section 41.001(12), Texas Civil Practice and Remedies Code, which in turn defines "nonpecuniary damages" to include pain, suffering and mental anguish, physical impairment, "and all other nonpecuniary

August 2019, following a hearing, the trial court signed a final judgment, reducing the jury's damages awards to the total sum of $255,678, not including prejudgment and post-judgment interest and costs, given the damages cap that applies to the noneconomic damages that may be awarded in cases involving claims subject to the Medical Liability Act.[9]

After the trial court finalized the judgment, Dr. Thome filed several post-judgment motions. In one of these, a Motion for JNOV, Dr. Thome argued (among other arguments we need not address here) the authorization accompanying Hampton's pre-suit notice failed to contain the language like that in the form prescribed in the Texas Medical Liability Act. According to the motion, the deficiencies in the authorization form Hampton's attorney provided him before she filed suit were insufficient to trigger the tolling provision of the Act. Dr. Thome asked the trial court to render a judgment that plaintiff take nothing because Hampton filed suit against him more than two years after her cause of action against him accrued.[10]

---

losses of any kind other than exemplary damages"); *id*. § 74.301(a) (capping noneconomic damages award against a physician or health care provider other than a health care institution for noneconomic damages "to an amount not to exceed $250,000 for each claimant").

[9]*Id.* § 74.301(a).

[10]*See id*. § 74.051(a), (c) (providing that when a person or the person's agent, who is asserting a health-care liability claim, gives the physician or health care provider written notice of the health-care liability claim 60 days prior to suit, a notice accompanied by an authorization in the form proscribed by the Legislature, the pre-

In November 2019, the parties appeared for a hearing on Dr. Thome's post-judgment motions, including his motion for JNOV. When the hearing started, Hampton's attorney conceded that, as to the award of prejudgment interest, the original judgment should be reformed because the prejudgment interest included in the judgment, a judgment the plaintiff's attorney drafted, needed to be reduced. Next, Dr. Thome's attorney argued the two-year statute of limitations barred Hampton's suit because she could not rely on the tolling provision in the Act because she did not provide Dr. Thome with the authorization prescribed by the Act and she failed to sue Dr. Thome within two years of the date her cause of action accrued.[11]

The trial court disagreed, concluding that Dr. Thome had not shown he was prejudiced by Hampton's failure to provide an authorization form that disclosed the physicians and health care providers who had examined, evaluated, or treated Hampton for her injuries or by Hampton's failure to disclose the health care providers who treated her in the five-year period before Hampton fell in March 2014. During the hearing, the trial court put it this way: The defendant has not shown "there was necessarily a prejudice" resulting from Hampton's failure to provide an

suit notice tolls "the applicable statute of limitations to and including a period of 75 days following the giving of the notice").

[11]*See id*. § 74.051(a) (requiring pre-suit notice at least 60 days prior to suit in healthcare liability claims); *id*. § 74.052 (providing healthcare liability claimants with the proscribed sample form, with blanks that must be filled out in place of the patient's name).

authorization in the form required by the Act.[12] Following the hearing, the trial court denied Dr. Thome's motion for JNOV.

## Analysis

A cause of action against a physician for an alleged departure from an accepted standard of care, which relates to a patient's treatment, is governed by the two-year statute of limitations.[13] As a health care liability claim, Hampton's claim against Dr. Thome is governed by the special procedures of the Act—the procedures found in the Texas Civil Practice and Remedies Code—including one requiring that Hampton provide Dr. Thome with "written notice" of her claim "by certified mail, return receipt requested, . . . at least 60 days before filing . . . suit[.]"[14] Under these special procedures, "[n]otice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of this notice[.]"[15]

---

[12]The record shows that more than a year before the trial, the trial court signed orders denying Dr. Thome's motion for summary judgment and amended motion for summary judgment. Both motions raise the two-year statute of limitations as a bar to Hampton's suit, and are based on the same argument that Hampton failed to comply with the requirements necessary to trigger the 75-day tolling provision of the Texas Medical Liability Act.

[13]*Id*. § 74.251(a) ("Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject for the claim or the hospitalization for which the claim is made is completed.").

[14]*Id*. § 74.051(a).

[15]*Id*. § 74.051(c).

9

Of significance here, Chapter 74 states: "The notice must be accompanied by the authorization for release of protected health information as required under Section 74.052."[16] Section 74.052 then spells out, in precise terms, the information that health care claimants are to include in the authorization form sent with the required pre-suit notice in cases involving the cases governed by the special procedures spelled out in the Act.[17]

On appeal, before deciding any other issues, the first question is whether the authorization form Hampton's attorney used triggers the tolling provision in the Act. If not, Hampton suit is barred by the two-year statute of limitations as a matter of law. If it did, then we must reach Dr. Thome's other two issues.

In response to Dr. Thome's argument that the authorization form Hampton's attorney used failed to trigger the tolling statute under the Act, Hampton attempts to dodge the issue by arguing Dr. Thome failed to preserve his claim for the purposes of his appeal because he is attempting to relitigate an adverse ruling he received on his motion for summary judgment. We disagree. The record shows Dr. Thome preserved the issue in three ways, by moving for directed verdict both at the close of the plaintiff's case-in-chief, by moving for directed verdict on the issue at the close of the trial, and by filing a post-judgment motion for JNOV. All three motions made

---

[16]*Id*. § 74.051(a).
[17]*Id*. § 74.052(c).

the same argument that he relies on here, that Hampton's attorney failed to take the actions required by statute to trigger the tolling provision in the Act and prevent the two-year statute of limitations from expiring on her clam. Finally, the record shows the trial court ruled on (and denied) all three of these motions.

Rule 33.1 of the Texas Rules of Appellate Procedure describes how parties are to preserve error for later appeal in a trial. To preserve error for appeal, the record must show the party who wishes to appeal made a timely request before the trial court by making an objection or motion stating the grounds for the ruling the party wanted with sufficient specificity to make the trial court aware of the complaint and do so in a manner that complied with any applicable requirements of the Rules of Evidence or procedure.[18] No one, whether in the trial court or here, has ever disputed the fact the record shows that Hampton's claim accrued more than two years before she filed suit. The record shows that both before the trial and during the trial, the trial court was fully aware there was a dispute about whether the authorization form Hampton's attorney used when he notified Dr. Thome he intended to file a suit on Hampton's behalf failed to track the language in the form prescribed by statute. While Hampton argues Dr. Thome suffered no prejudice, the question of whether she filed a form sufficient to comply with the requirements of the Act is a question of law, a matter that involves a court interpreting the requirements of a statute. As

---

[18]Tex. R. App. P. 33.1(a).

such, it is not a question of fact that the trial court needed to submit to the jury to decide whether Dr. Thome suffered prejudice.

Here, the record shows Dr. Thome made the trial court aware of his complaint at the appropriate stage of the case and that he secured a ruling on his motion. We conclude Dr. Thome did all he was required to do under the Rules of Appellate Procedure to preserve the argument that he made in his brief to support his first issue.[19]

Next, we look to the authorization form that Hampton's attorney sent to Dr. Thome and compare it to the form the Legislature prescribed in the Act to decide if the form Hampton used complied with the requirements of the Act. On appeal, Dr. Thome argues the form he received is deficient for three reasons: (1) the authorization he received does not allow him to obtain records from any physicians or health care providers who may, on a date after Hampton signed the authorization, evaluate, examine, or treat Hampton for the injuries she allegedly suffered as a result of the claim at issue in the suit, which is (he argues) required by statute;[20] (2) the authorization does not list each physician and healthcare provider who examined, evaluated, or treated Hampton in connection with the claim at issue in the suit, which

---

[19]*Id.*

[20]Tex. Civ. Prac. & Rem. Code Ann. § 74.051(c) (Authorization Form For Release Of Protected Health Information, Part B1).

is (he argues) required by statute;[21] and (3) the authorization fails to identify the physicians or health care providers who examined, evaluated, or treated Hampton in the five-year period before the incident made the basis of her suit, which is (he argues) required by statute.[22]

The text of the statute contains language stating the "notice *must be accompanied* by the authorization form *as required* under section 74.052." (emphasis added).[23] More than four years before Hampton's attorney sent Dr. Thome the authorization that he used, the Texas Supreme Court explained that when that Act uses the word *must*, the language "is a directive that creates a mandatory condition precedent."[24]

To be sure, *Carreras*, the Texas Supreme Court case that discusses the authorization requirement as a mandatory requirement, is a case where the putative plaintiff sent the health care provider a pre-suit notice unaccompanied by any authorization releasing the patient's medical records. That is not the same situation we have before us here.[25] Even so, in *Carreras* the Texas Supreme Court said that "for the statute of limitations to be tolled in a health care liability claim pursuant to

---

[21]*Id.*
[22]*Id.* (Authorization Form For Release Of Protected Health Information, Part B2).
[23]*Id.* § 74.052.
[24]*Carreras v. Marroquin*, 339 S.W.3d 68, 72 (Tex. 2011).
[25]*Id.*

13

Chapter 74, a plaintiff must provide both the statutorily required notice and the statutorily required authorization form." Comparing the form Hampton's attorney provided to Dr. Thome with the one prescribed by section 74.042, the form Dr. Thome received falls well short of describing the information required by the Act to be included and well short of authorizing Dr. Thome to obtain the scope of information he was entitled to obtain had Hampton's attorney used the prescribed form.[26]

For instance, the record shows the release Hampton signed authorized Dr. Thome to obtain medical records from only two of Hampton's thirteen health care providers, treaters whose records show they either treated Hampton for her injuries or had seen her in the five-year period before she was discharged from the hospital. In addition to that, the release form that Hampton's attorney used contains no language that extends to health care providers that treated Hampton after the date Hampton signed the release, even though the statute requires the authorizations used under the Act to state "[t]his authorization shall extend to any additional physicians or health care providers that may in the future evaluate, examine, or treat [Hampton] (patient) for injuries alleged in connection with the claim made the basis of the attached Notice of Health Care Claim[.]"[27]

---

[26]Tex. Civ. Prac. & Rem. Code Ann. § 74.052(c).
[27]*See id*.

The purpose of pre-suit notices in health care cases "is to encourage negotiations and settlement of disputes prior to suit, thereby reducing litigation costs."[28] To the extent these disclosures are mandated by section 74.052, the notice allows physicians and other health care providers (to the limited extent the disclosures are mandated by the statute) to explore the health care liability claimant's past medical history, which includes a release authorizing the health care provider who is the target of a potential suit to conduct an investigation into the claimant's preexisting medical conditions so that they may evaluate the potential, if any, of the claim. Here, the trial court imposed a prejudice requirement on Dr. Thome, but that is a requirement that we do not find in the Act as to tolling. Simply put, courts may not ignore a statute and make policy decisions about matters when the policy set by the court contradicts the policies hammered out by the Legislature when voting to pass a statute.[29]

We hold the defects Dr. Thome identified in the release accompanying Hampton's pre-suit notice are equal to or greater than those our sister courts have found to violate section 74.052.[30] Accordingly, we sustain Dr. Thome's first issue.

---

[28]*Carreras*, 339 S.W.3d at 73.

[29]*Waak v. Rodriguez*, 603 S.W.3d 103, 111 (Tex. 2020).

[30]Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-.507. *Id.* § 74.052(c); *Tanhui v. Rhodes-Madison*, No. 12-20-00240-CV, 2021 WL 1916819, at *3 (Tex. App.—Tyler May 12, 2021, no pet.) (mem. op.); *Colia v. Ewing*, No. 02-19-00109-CV, 2020 WL 241978, at *2 (Tex. App.—Fort Worth Jan. 16, 2020, pet. denied) (mem. op.); *Galloway v. Atrium Med. Ctr., L.P.*, 558 S.W.3d 316, 320-21 (Tex. App.—

Because that issue is dispositive, we need not address the remaining issues to dispose of the appeal.[31]

Conclusion

We conclude Hampton's attorney sent Dr. Thome a noncompliant authorization, which due to its defects never triggered the tolling exception available to other health care liability claimants who comply with the statutory requirements available in the Act. Hampton then failed to sue Dr. Thome within two years of the date her cause of action accrued. We hold the record conclusively shows that Hampton's suit is barred by the two-year statute of limitations and that tolling does not apply.

Accordingly, we reverse the trial court's judgment, and render judgment that the plaintiff take nothing from the defendant in the suit.[32]

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on July 15, 2021
Opinion Delivered March 17, 2022
Before Kreger, Horton and Johnson, JJ.

_____

Houston [14th Dist.] 2018, no pet.); *Davenport v. Adu-Lartey*, 526 S.W.3d 544, 552 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *Borowski v. Ayers*, 524 S.W.3d 292, 301-03 (Tex. App.—Waco 2016, pet. denied).

[31]*See* Tex. R. App. P. 47.1.

[32]Tex. R. App. P. 43.2(c) (authorizing the Court of Appeals to reverse the trial court's judgment and "render the judgment that the trial court should have rendered").